Columbia Casualty Company v. Commissioner.
Columbia Cas. Co. v. Commissioner
Docket No. 8592.
United States Tax Court
1948 Tax Ct. Memo LEXIS 191; 7 T.C.M. (CCH) 282; T.C.M. (RIA) 48075; May 13, 1948
*191 Petitioner, a casualty insurance company taxable under section 204, Internal Revenue Code, computed its unpaid losses outstanding at the end of 1942 as required by the annual report to the State Insurance Department on the form approved by the National Convention of Insurance Commissioners. Held, petitioner's computation was in accordance with section 204 (b). Commissioner v. New Hampshire Fire Insurance Co., 146 Fed. (2d) 697, affirming 2 T.C. 708. Held, also, petitioner's unearned premiums reserve is not includible in equity invested capital for 1940 or 1941, following Federal Union Insurance Co., 5 T.C. 374. Edward S. Coons, Jr., Esq., 1 Park Ave., New York 16, N.Y., for the petitioner. William A. Schmitt, Esq., for the respondent. ARNOLD *192 Memorandum Findings of Fact and Opinion The respondent determined for the calendar year 1942 a deficiency in excess profits tax in the amount of $433,520.38 and an overassessment of income tax of $190,057.89. The petitioner, a casualty insurance company subject to tax under section 204 of the Internal Revenue Code, alleges that the respondent erred (1) in determining petitioner's deduction for losses incurred as of December 31, 1942, by using its own estimates of unpaid and outstanding liability and workmen's compensation losses, rather than the amounts required by the form of Annual Statement Approved by the National Association of Insurance Commissioners, and (2) in excluding from petitioner's equity invested capital for 1940 and 1941 its reserves for unearned premiums. The years 1940 and 1941 are involved through carryovers to 1942 of unused excess profits credits. The facts are found as stipulated. Findings of Fact The petitioner is a domestic corporation, duly organized and existing under the laws of the State of New York. It maintains its principal office at One Park Avenue, New York, N. Y. It is, and at all times herein mentioned was, engaged *193 in the business of casualty insurance, including, among other forms of such insurance, the underwriting of liability and workmen's compensation risks. It is an insurance company other than life or mutual as defined in section 204 of the Internal Revenue Code, and a "casualty insurance company" as defined in section 310 of the Insurance Law of the State of New York. In making the annual report of its income, condition and operations for the year 1942 to the Insurance Department of the State of New York, the petitioner used the form required by the rules and regulations of that Department. Such form is commonly known as the "Convention Edition of the Annual Statement" and is the form approved by the National Association of Insurance Commissioners. It requires that liability and workmen's compensation losses unpaid and outstanding at the end of the year be computed and reported in two ways: (1) by estimating the amount of such unpaid and outstanding losses on all open cases according to appraisals made in the company's claims department and approved by its officials (hereinafter referred to as the case estimate method), and (2) by using such estimated amounts *194 for all open cases arising out of policies issued prior to the second year preceding the current year and adding thereto 60 per cent of the premiums earned on liability risks and 65 per cent of the premiums earned on workmen's compensation risks in the current year and in each of the two preceding years (hereinafter referred to as the percentage of premiums formula method). The Convention Edition of the Annual Statement requires that there be included in unpaid and outstanding losses, in respect of cases arising within such three-year period, the company's estimates or the amounts resulting from the percentage calculations, whichever are higher. At the end of 1942 the petitioner's estimated liabilities in respect of all open cases aggregated $1,095.673 for liability losses and $837,364 for workmen's compensation losses. The corresponding amounts, computed by adding 60 and 65 per cent of premiums earned in 1940, 1941 and 1942 on liability and workmen's compensation risks, respectively, to the estimated liabilities in respect of open cases of prior years, were $1,187,701.13 and $850,360.36, respectively. In the Underwriting Exhibit of the petitioner's 1942 Annual Statement, "Losses *195 Incurred" were computed by reflecting as unpaid and outstanding liability losses at the end of 1942 the amount of $1,187,701.13, and by reflecting as unpaid and outstanding workmen's compensation losses at the end of 1942 the amount of $879,232. Each of such amounts was required by the New York Insurance Department and by the Convention Edition of the Annual Statement to be so reported, except that the unpaid and outstanding losses in respect of workmen's compensation risks ($879,232) included $28,871.64 voluntarily added by the petitioner and not here in controversy. In determining the deficiency herein, the respondent allowed a deduction for "losses incurred" in 1942 computed by using as unpaid and outstanding liability and workmen's compensation losses the amounts estimated by the petitioner, namely, $1,095,673 for liability losses and $837,364 for workmen's compensation losses. It is agreed that if the petitioner is entitled to use $1,187,701.13 and $850,360.36 ($879,232 less the $28,871.64 voluntary addition) as its unpaid and outstanding liability and workmen's compensation losses, respectively, it is entitled to a deduction for "losses incurred" in 1942 of $105,024.49 in *196 excess of the amount allowed by the respondent in determining the deficiency; otherwise that the respondent's allowance was correct. Such $105,024.49 is computed as follows: Unpaid and Outstanding
Losses - Dec. 31, 1942
Liability - Petitioner's basis
$1,187,701.13
Liability - Respondent's basis
1,095,673.00
$ 92,028.13
Compensation - Petitioner's basis
$850,360.36
Compensation - Respondent's basis
837,364.00
12,996.36
$ 105,024.49
For the year 1940 the respondent determined that the petitioner's average invested capital, before reduction for inadmissible assets, was $4,647,.093.48; that the ratio of its inadmissible to total assets was 15.52 per cent; that its excess-profits credit was $314,069.17; that its excess-profits net income was $254,241.94; and that its unused excess-profits credit was $59,827.23, which was allowed in determining the deficiency. In determining that the petitioner's 1940 average invested capital was $4,647,093.48, the respondent excluded therefrom (1) the petitioner's total reserve for losses outstanding at the beginning of such year, amounting to $1,837,682.75, and (2) its reserve for unearned premiums, *197 amounting to $1,926,876.63. It is agreed that if the petitioner is entitled to include either of such items in its invested capital, the amount of $4,647,093.48 should be increased accordingly; otherwise, that the respondent's determination of average invested capital, before reduction for inadmissible assets, was correct. It is further agreed that the petitioner's excess-profits net income was $254,241.94, as the respondent determined; but that the ratio of its inadmissible assets to its total assets was 14.1616 per cent, instead of 15.52 per cent as determined by the respondent. For the year 1941 the respondent determined that the petitioner's average invested capital, before reduction for inadmissible assets, was $4,492,382.97; that the ratio of its inadmissible to total assets was 18.22 per cent; that its excess-profits credit (exclusive of any unused excess-profits credit from the year 1940) was $293,909.66; that its excess-profits net income was $223,994.40; and that its unused excess-profits credit was $69,915.26, which was allowed in determining the deficiency. In determining that the petitioner's 1941 average invested capital was $4,492,382.97, the respondent excluded therefrom *198 (1) the petitioner's total reserve for losses outstanding at the beginning of such year, amounting to $2,134,627.57, and (2) its reserve for unearned premiums, amounting to $2,015,675.01. It is agreed that if the petitioner is entitled to include either of such items in its invested capital, the amount of $4,492,382.97 should be increased accordingly; otherwise, that the respondent's determination of average invested capital, before reduction for inadmissible assets, was correct. It is further agreed that the petitioner's excess-profits net income was $223,994.40 as the respondent determined; but that the ratio of its inadmissible assets to its total assets was 16.631 per cent instead of 18.22 per cent as determined by the respondent. No particular part of the petitioner's assets was segregated or earmarked, nor was any special fund created, as representing its reserve for losses or its unearned premium reserve at any time during either of the years 1940 or 1941. Its excess-profits net income for each such year, as determined by the respondent ($254,241.94 and $223,994.40, respectively), included all the petitioner's investment income, except dividends excluded therefrom by section 711 (a) (2) (A) of the Internal Revenue Code *199 . For the year 1942 the respondent determined that the petitioner's average invested capital, before reduction for inadmissibles, was $5,738,086.03; that the ratio of its inadmissible to total assets was 18.8199 per cent; that its excess-profits credit (exclusive of any unused excess-profits credit from the years 1940 and 1941) was $372,654.72; and that its excess-profits net income was $1,000,580.28. It is agreed that the ratio of the petitioner's inadmissible assets to its total assets for such year was 17.16807 per cent instead of 18.8199 per cent as determined by the respondent, and that its excess-profits net income was $1,000,580.28 except as such amount is affected by the Court's decision of the proper deduction for "losses incurred". The petitioner duly filed its excess-profits tax return for the year 1942 with the collector of internal revenue for the third New York district, reporting no tax liability. On March 21, 1944, the petitioner filed an amended excess-profits tax return with the collector. The amended excess-profits tax return reported a tax liability of $10,344.38, which was paid on the date of filing, together with interest of $631.01. On December 15, 1946, the *200 petitioner paid to the collector the sum of $485,217.68 in respect of its excess-profits tax for the year 1942 and interest thereon, the amount being computed by the petitioner as follows: Excess-profits tax deficiency
$433,520.38
Less: 10 per cent post-war credit
43,352.04
Balance of tax
$390,168.34
Add: Interest on $433,520.38 from 3-15-43
to 12-31-45 (16 3/4 per cent)
72,614.66
Interest on $390,168.34 from 1-1-46 to
12-15-46 (5 3/4 per cent)
22,434.68
Total payment
$485,217.68
Opinion ARNOLD, Judge: The first issue involves the proper computation of petitioner's "losses incurred" for the year 1942. The petitioner is an insurance company taxable under section 204 of the Internal Revenue Code. The gross income of such an insurance company is defined by section 204 (b) (1) as including the combined gross amount earned during the year from investment income and from underwriting income, "computed upon the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners." Section 204 (b) (4) defines underwriting income as premiums earned less losses incurred *201 and expenses incurred, and section 204 (b) (6) defines losses incurred as losses during the year on insurance contracts, computed by adding to losses paid during the year salvage and reinsurance recoverable outstanding at the end of the preceding year and deducting salvage and reinsurance recoverable outstanding at the end of the year, then adding all unpaid losses outstanding at the end of the year and deducting unpaid losses outstanding at the end of the preceding year. The petitioner's annual report to the Insurance Department of the State of New York, on the form approved by the National Association of Insurance Commissioners, computed its unpaid and outstanding losses at the end of 1942 on the two different bases required by the form. The methods of computation and the resulting amounts are stated in the findings of fact. The case estimate method of computation resulted in a lesser amount than the percentage of premiums formula method. The form of report to the State of New York required the use of whichever resulting figure was the higher in reporting the company's unpaid and outstanding losses. This is in keeping with the purpose of the report, which is to enable the State *202 Insurance Department to judge the solvency of the company. The petitioner, in computing its net income for income and excess-profits tax purposes, used the same higher figure. The respondent computed the petitioner's income by using the lower figure of its own case estimates, which resulted in a larger taxable income. The correctness of this action of the respondent is in issue. In New Hampshire Fire Insurance Co., 2 T.C. 708, affirmed, 146 Fed. (2d) 697, we held that the income tax returns of an insurance company taxable under section 204 must be based on the Convention Form and its taxes computed on the basis of the transactions there reported. The issue there was whether transactions with unadmitted companies, which transactions were not recognized by the Form, should be considered in determining the taxpayer's net income. We expressed the view (p. 722) that the "Congress comprehended the completely universal use of the Convention Form; that it conformed the phraseology of the statute to the technical terms appearing in the form; that for Federal tax purposes it adopted bodily the Convention Form and its method of reporting its transactions resulting *203 in income, and that it had a thorough knowledge of the provisions of the form properly safeguarding the interests of the public." The Circuit Court, in affirming, observed also that following an established practice of computing income on the basis of the Convention Form would avoid useless confusion and expense to the taxpayer and to the Bureau of Internal Revenue (146 Fed. (2d) 700-701). The "losses incurred" by an insurance company are the losses paid, plus the increase (or minus the decrease) in the losses incurred and unsettled at the end of the year over the amount thereof for the preceding year, plus also the decrease in salvage and insurance recoverable (or minus the increase therein). Over a sufficient period of years the increases and decreases in the unpaid losses, whichever method of computation is employed, and in salvage and reinsurance recoverable, will average zero and the measure of "losses incurred" will be the actual paid losses. The fluctuations in the amount of unpaid losses will increase "losses incurred" in one year and decrease this item in another, but over a long period will not affect the total deductions for "losses incurred". Since "underwriting *204 income" involves "losses incurred", which in turn involves "unpaid losses outstanding", and since "underwriting income" is to be "computed upon the basis of" the exhibit, it follows that "unpaid losses outstanding", for purposes of the tax computation, are those reported on the exhibit of the Annual Statement approved by the National Convention of Insurance Commissioners. The petitioner, in computing its income on the basis of the figures in the exhibit, was following the requirements of section 204 (b). The respondent argues that our decision in the New Hampshire Fire Insurance Co. case was not correct and that section 204 does not requie the computation of underwriting income in blind compliance with the Convention Form. The respondent points out that the Board of Tax Appeals has said the statute contemplates the use of the Convention Form as a guide and not as a limitation on the application of the statute, citing Massachusetts Protective Association, Inc., 18 B.T.A. 810, 816; American Title Co., 29 B.T.A. 479, 482, affirmed, 76 Fed. (2d) 332; and Pacific Employers Insurance Co., 33 B.T.A. 501, 503, affirmed, 89 Fed. (2d) 186. *205 Subsequent to these decisions and prior to our decision in New Hampshire Fire Insurance Co., the Joint Committee on Internal Revenue Taxation released for public use and reference an excerpt from the hearings on HR 8245, 67th Congress, 1st Session (the Revenue Act of 1921), confidentially printed for use of members of the Senate. This we quoted in our opinion in New Hampshire Fire Insurance Co., supra (pages 721-722), and drew the conclusion that the Convention Form was adopted by the Congress "as the standard for determining the tax" on insurance companies other than life or mutual, and that "the Convention Form as understood, followed, and applied in the insurance world must control the computation of income" of such companies. Over a period of years approximately the same amount will be reported as income, and tax paid thereon, whether the higher or lower computation of unpaid losses is used. We consider the New Hampshire Fire Insurance Co. case controlling on this issue. The other issue is whether the petitioner's unearned premiums reserve is includible in petitioner's equity invested capital for 1940 and 1941. The petitioner concedes that this Court has held, in Federal Union Insurance Co., 5 T.C. 374, *206 that an unearned premiums reserve is not so includible, but contends that such decision is not correct. In that case we held that for the year 1940 unearned premiums are not a part of an insurance company's accumulated earnings and profits; that the regulations (section 30.718-2 of Regulations 109, as amended) were valid in declaring that "the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax"; and that section 19.115-3 of Regulations 103, as amended, excluding unearned premiums from earnings and profits of an insurance company subject to taxation under section 204, is applicable. We noted that the Revenue Act of 1942 amended sections 718 and 719 of the Internal Revenue Code to allow inclusion of unearned premiums as borrowed capital for purposes of computing the invested capital excess profits tax credit. The amendment applied to taxable years beginning after December 31, 1941. In considering the effect of that amendment, we said in the Federal Union case, (p. 379): "While we place no reliance on this amendment in seeking the intention of the earlier Congress, since the *207 inferences which may be drawn from this statement and from the 1942 Act are conflicting, as plausible an inference as any is that Congress is here recognizing the validity of the regulations under the 1940 Act and is so modifying the act as to permit the inclusion of one-half the reserves in invested capital under the heading of borrowed capital." We have considered the petitioner's arguments, but have concluded that our decision in the Federal Union case properly interpreted the law applicable here. Accordingly, we hold for the respondent on this issue. Decision will be entered under Rule 50.