GULF POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 12397, 13406. Promulgated May 17, 1948.

*Roswell Magill, Esq.*, *H. Brice Graves, Esq.*, and *Albert R. Connelly, Esq.*, for the petitioner.

*Harold D. Thomas, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: In acquiring its Florida utility properties, petitioner paid approximately $1,700,000 more than the cost of such properties to the companies which first devoted them to utility purposes. This excess over original cost petitioner carried in account 100.5. Petitioner characterizes it as "integration value," said to be an intangible asset attributable to the advantages and possible economies resulting from integrating many small utility plants and distribution systems into one large system with centrally located generating plants and interconnected power transmission lines.

In 1943 the Federal Power Commission ordered petitioner to charge off approximately $1,000,000 of the amount in account 100.5 to a then existing capital surplus, and to amortize the $700,000 balance at the rate of $4,000 a month, or $48,000 a year. By reason thereof petitioner contends it is entitled to a loss deduction under section 23 (f) of the code in the amount of $650,221.82 (its tax basis on the amount charged off to capital surplus) and a depreciation or obsolescence deduction of $48,000 under section 23 (l).

Petitioner's somewhat novel theory is that the Federal Power Commission conclusively determined that $1,000,000 of its assets had completely lost their useful value and that $700,000 of its assets would lose their useful value over a period of 15 years at the rate of $48,000 a year. There is nothing, however, in the findings or the order of the Commission, a copy of which the parties have stipulated, to support such a view. The Commission was concerned only with questions of proper accounting under the uniform system of accounts, not with whether petitioner had sustained losses; and in no sense did its order purport to be a determination of a fact that a loss had been sustained

in 1943 or that an asset of the petitioner was gradually losing its useful value over a period of years. Certainly it was no mere coincidence that the amount of $1,005,587.47 ordered to be charged off immediately was exactly equal to petitioner's then existing capital surplus. Nor do we agree with petitioner that *American Telephone & Telegraph Co.* v. *United States*, 299 U. S. 232, means that a finding of loss necessarily inheres in the Commission's order.

In attempting to prove that it actually sustained a loss, petitioner presented the opinion testimony of an accountant, an engineer in the public utility field, a banker who was a member of the public utility department credit committee of his bank, and the president of the Commonwealth & Southern Corporation. In general, these witnesses testified that the Commission's order would be an adverse or unfavorable factor for rate-making purposes, for credit purposes, and perhaps even for sale purposes. We think this testimony falls far short of establishing that petitioner sustained a loss which is deductible under the income tax laws. Even assuming that the Commission's order might have some unfavorable effect on the sale of the petitioner's property, it is clear enough that there has been no sale or other closed transaction to fix definitely the amount of the loss.

In argument, petitioner treats the amount carried in account 100.5 which it calls "integration value," as a separate and distinct asset, such as a patent, copyright, lease, or license. It cites cases involving deductions for depreciation or for the loss of useful value of intangible assets of that character and points out that the regulations allow depreciation on patents and copyrights used in the trade or business. Regulations 111, sec. 29.23 (1)–3. If, in fact, the account 100.5 item does properly represent intangible rather than tangible value, it would seem to be more analogous to good will or going concern value. See *American Power & Light Co.* v. *Securities & Exchange Commission*, 158 Fed. (2d) 771, 775. Though conservative accounting might warrant the write-off or amortization of such intangibles as good will, going concern value, or integration value over a comparatively short period for purposes of public utility regulation, it does not follow that tax deductions are warranted thereby. The regulations expressly provide that no deduction for depreciation or obsolescence is allowable in respect of good will. See Regulations 111, sec. 29.23 (1)–3. Moreover, many business concerns, as a matter of conservative accounting, frequently write down the value of intangible assets, such as patents, to some nominal value; but surely it could not be contended that the write-down gives rise to a tax deduction.

It seems to us that the Commission required the charge-offs here in issue for accounting purposes in accordance with its own rules. Rules of accounting, however, which may be required of a business concern by some other Federal body are not binding upon the Com-

missioner of Internal Revenue, nor are they controlling of tax questions. See *Old Colony R. Co.* v. *Commissioner*, 284 U. S. 552, and *Gulf, Mobile & Northern R. Co.* v. *Commissioner*, 83 Fed. (2d) 788, with respect to accounting rules of the Interstate Commerce Commission, and *National Airlines, Inc.*, 9 T. C. 159, with respect to accounting rules of the Civil Aeronautics Board.

The amount in question here simply represents the excess of cost to petitioner over the cost to the original owners first devoting the properties to public utility purposes. Petitioner still has, and is operating, those properties. Notwithstanding that what petitioner characterizes as "integration value" was segregated and carried in a separate account on petitioner's books for accounting purposes, it is an indivisible part of the cost of its entire plant. If the amount in account 100.5 is properly to be treated as an intangible, it is of a kind which could no more be separated from plant value and disposed of than could good will, independently of the business with which it is associated. In effect, petitioner is claiming deduction for an undivided portion of the cost of its entire operating system.

No deduction is allowable for a mere decline, diminution, or shrinkage in value. *Weiss* v. *Wiener*, 279 U. S. 333; *C. F. Mueller Co.*, 40 B. T. A. 195; cf. *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398. At most, the effect of the Commission's order is of that nature—that is, a possible diminution in the value of petitioner's property. The order did not make the petitioner's property, or any severable part of it, worthless.

Since the petitioner's entire case is based on the effect of the Commission's order, we hold that there is no merit in its claims for deductions. At the same time, it should be clearly understood we are not holding that, for tax purposes, the amount carried in account 100.5 represents in its entirety nondepreciable intangible property. What we do decide is that accounting rules and practices required of this petitioner by the Federal Power Commission for purposes of that body's functions are not controlling of tax questions and do not by their own force give rise to tax deductions. By the same token, neither do such rules or orders of that Commission determine petitioner's basis for depreciable property, taxwise. If any part of the amount carried in account 100.5 is properly includible in petitioner's basis for depreciable property, nothing we here say or decide will prevent petitioner's recovering its investment through depreciation allowances. And if any part or all of the amount in that account represents tangible or intangible property which is nondepreciable for tax purposes, neither our decision here nor the Power Commission's order means that such amount is not includible in petitioner's tax basis for gain or loss upon the sale or other definitive disposition of its property. The instant proceedings present no such issues.

*Decisions will be entered under Rule 50.*