BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8993. Promulgated October 20, 1950.

George H. Koster, Esq., for the petitioner.
Earl C. Crouter, Esq., for the respondent.

548

OPINION.

HARRON, *Judge:* The issue in this proceeding is whether transfers by petitioner of the legal title to eight of its banking properties resulted in deductible losses under section 23 (f).

Petitioner contends (1) that the transfers of properties to Capital were *bona fide* sales which resulted in deductible losses; and (2) that even if the transactions are viewed as sales of the properties by petitioner to Merchants, the fact that Merchants was a wholly owned subsidiary of petitioner does not require disallowance of the claimed deductions.

Respondent contends that the losses are not deductible because petitioner never relinquished dominion and control over the properties. With respect to the transfers to Capital, respondent contends that the transfers did not constitute *bona fide* sales because of Capital's oral agreement to retransfer the properties to Merchants, a wholly owned subsidiary of petitioner. With respect to the transfers to Merchants, respondent contends that no loss was sustained by petitioner as a result of the transfers of the title to the properties to Merchants. Respondent emphasizes the point that Merchants was a wholly owned subsidiary of petitioner, subject to petitioner's complete dominion and control, and that the "lease" arrangements with Merchants were not arms-length lease agreements such as would be made with a stranger.

In order for a loss upon the sale of property to be deductible, it must be established by a *bona fide* sale. *Higgins* v. *Smith*, 308 U. S. 473. See, also, Regulations 111, section 29.23 (e) (1), (f) (1). And the loss must be actual and real. *Gregory* v. *Helvering*, 293 U. S. 465; *Burnet* v. *Huff*, 288 U. S. 156; *Weiss* v. *Wiener*, 279 U. S. 333. Also, under section 23 (f), a taxpayer must prove that a loss is *sustained*. The transactions between petitioner and Capital do not satisfy these requirements.

All of the facts in this proceeding have been stipulated, and they are not in dispute. In fact, the petitioner has not concealed at any time any of its arrangements, but has made full disclosures of them, at least as far as this proceeding is concerned. The facts show that petitioner conveyed the legal title to the properties to Capital, and that it meticulously complied with all of the customary formalities necessary for the transfers of title. However, transfer of naked legal title is but one of the elements to be considered in determining the true nature of a transaction. *United States* v. *Utah-Idaho Sugar Co.*, 96 Fed. (2d) 756. The other circumstances present in this proceeding establish that there was not a *bona fide* sale of the properties to Capital with a complete termination of petitioner's interests in the properties.

Prior to the transfer of the banking properties to Capital, petitioner reached an agreement with Capital which provided:

* * * that the Bank [petitioner] intended to and would receive back, deeds to the said property within thirty days or so after delivery of deeds thereto to Capital Company, and Capital Company agreed to execute and deliver deeds to said property to the Bank or Merchants at any time upon request of the Bank;

that there would not be any written agreement between the Bank, Merchants and Capital Company providing for the execution and delivery of deeds from Capital Company to the Bank or to Merchants; that when the Bank requested delivery of deeds to such property from Capital Company to it or to Merchants, the Bank or Merchants would give its check to Capital Company for the same amount of the check which Capital Company gave the Bank or Merchants for the respective property, plus acquisition costs incurred by Capital Company in connection with the transaction; * * *

Where a sale is made as part of a composite plan which includes, as in this proceeding, an agreement for the reacquisition of the property sold, and the plan is carried out, any loss suffered as a result of the "sale" of the property is not deductible. *Pierre S. DuPont*, 37 B. T. A. 1198, affd., 118 Fed. (2d) 544, certiorari denied, 314 U. S. 623; *Sidney M. Shoenberg*, 30 B. T. A. 659, affd., 77 Fed. (2d) 446; *Foster* v. *Commissioner*, 96 Fed. (2d) 130; *Commissioner* v. *Dyer*, 74 Fed. (2d) 685, certiorari denied, 296 U. S. 586. It makes no difference that the property is to be reacquired by a subsidiary or a close affiliate of the original seller, rather than by the seller itself. *Rand Co.*, 29 B. T. A. 467, affd., 77 Fed. (2d) 450; *John M. Burdine Realty Co.*, 20 B. T. A. 54. The reason for the general rule was stated by the Court of Appeals in *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446, 449, as follows:

A loss as to particular property is usually realized by a sale thereof for less than it cost. However, where such sale is made as part of a plan whereby substantially identical property is to be reacquired and that plan is carried out, the realization of loss is not genuine and substantial; it is not real. This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real.

The facts in this proceeding show beyond any doubt that there were no real and complete sales of any of the banking properties to Capital by petitioner in 1943 which can be recognized for tax purposes. Petitioner never relinquished dominion or control over the eight properties to Capital. Petitioner intended only a temporary vesting of title in Capital, and it was assured of its ability to recover the properties under its oral agreement with Capital.

Petitioner argues that it lost dominion and control over the properties because it could not have compelled Capital to reconvey the properties to it or its subsidiary. In other words, petitioner now asserts that its oral agreement violated the requirement of the statute of frauds that all agreements for the transfer of title to real property must be in writing, and, therefore, the oral agreement with Capital is now said to have been an invalid agreement. Aside from the point that partial performance probably took the transaction out of the reach of the statute of frauds, the fact is that the oral agreement actually was executed by the reconveyance of title to the properties by

Capital and it was the intention of the parties that Capital should be merely a conduit through which petitioner could transfer formal title to Merchants.

The petitioner also refers us to *Bancitaly Corporation*, 34 B. T. A. 494, 509–16, in support of its contention that the transaction with Capital was a completed transaction which should be recognized for tax purposes, and contends that a holding in this proceeding which would sustain the respondent's determination, that is, a holding to the effect that the steps followed in the transaction with Capital had no substantive effect, would be inconsistent with our holding in *Bancitaly Corporation*. However, we find little similarity between this proceeding and that of *Bancitaly Corporation* in the matter of either the facts or the issue involved in the respective proceedings. In the *Bancitaly* case, the Bancitaly Corporation sold 150,000 shares of stock and subsequently reacquired 84,198 of the shares which it had sold. The issue in the case was whether the Bancitaly Corporation realized taxable income upon the sale of the 84,198 shares which it subsequently repurchased. As the basis for the holding that taxable income was realized, the Board expressly found as a fact that the sale of 150,000 shares of stock and the subsequent repurchase of 84,198 of the shares were two separate and independent transactions and that the original purchaser was under no obligation to resell any of the shares to petitioner. In this proceeding, however, Capital was merely a conduit for the passage of title to the eight bank properties from petitioner to Merchants. Capital was obligated to deliver deeds to the eight branch banks back to petitioner or Merchants, and the parties never intended, under any circumstances, that Capital should retain title to any of the eight properties.

In the last analysis we must weigh the evidence in this proceeding and make an independent determination about the transaction which is involved here. This we have done, and we have concluded that respondent's determination on this issue must be sustained. The interjection of Capital between petitioner and Merchants does not insulate the transactions from any infirmities arising from the fact that Merchants was a wholly owned subsidiary of petitioner, subject to petitioner's complete dominion and control. The sale must be viewed as being made between petitioner as vendor and Merchants as vendee, and the question thus becomes what effect does the closeness of the relationship between petitioner and Merchants have upon the deductibility of the loss in question.

This is not a new question. In *Higgins* v. *Smith, supra*, the Supreme Court considered the question of whether a sale of stock at a loss by an individual to a corporation which was wholly owned by him resulted in a deductible loss to the individual. The business of the corporation consisted of buying and selling securities, largely

from and to the taxpayer. The Supreme Court held that "domination and control is so obvious in a wholly owned corporation as to require a peremptory instruction that no loss in the statutory sense could occur upon a sale by a taxpayer to such an entity." See, also, *Crown Cork International Corporation*, 4 T. C. 19, affd., per curiam, 149 Fed. (2d) 968.

Petitioner attempts to distinguish *Higgins* v. *Smith* and *Crown Cork International Corporation*, *supra*, on the ground that in those cases no business purpose other than the saving of taxes was shown, while in this proceeding it claims that it has shown another business purpose, namely, to satisfy the demands of the Comptroller of the Currency. However, the basis of the *Smith* and *Crown Cork International Corporation* cases was not that the transactions in question were designed to save taxes, but that they lacked substance and reality because of the continued control of the taxpayer over the property transferred through its domination and control of the wholly owned corporation which received the property. Indeed, both cases cite *Gregory* v. *Helvering*, *supra*, which is authority for the rule that an intent to save taxes is not to be condemned, and a taxpayer may resort to any legal means to accomplish that result. Moreover, petitioner has not shown that the Comptroller of the Currency required that the bank properties be sold. The only requirement of the Comptroller was that petitioner write down the value at which it carried the properties on its books by charging the excess of book value over fair market value to a surplus account. This was consistent with the general authority of the Comptroller contained in the National Bank Act, United States Code, Title 12, *passim*, and the decision of the Supreme Court in *Thomas* v. *Taylor*, 224 U. S. 73; cf. *Yates* v. *Jones National Bank*, 206 U. S. 158. The evidence shows that possible tax advantages were an important consideration in arriving at the complicated form in which the simple requirement of the Comptroller was met.

However, the ground for this decision is not whether or not the intent to effect a tax savings was the dominant purpose of petitioner. The basis for the decision is the complete dominion and control which petitioner continued to exercise over the properties transferred through its complete domination and control of its wholly owned subsidiary. Petitioner makes no argument that such dominion and control did not exist. In light of the stipulated facts, it can not. Petitioner owned all the outstanding stock of Merchants, and the two corporations had interlocking officers and directors. Merchants had no independent business or economic life of its own. It had no salaried employees, and whatever work was necessary to the operation of its business was performed by employees of petitioner. The only business in which Merchants was engaged was the ownership of the

property which it leased to petitioner. However, the lease agreements between petitioner and Merchants were not arms-length transactions such as would be entered into with a stranger. The rental formula between the parent and the subsidiary provided that Merchants would receive as rent from petitioner an amount equal to the total of all expenses and charges, including depreciation, allowable to Merchants as deductions from gross income for Federal income tax purposes, less any income derived by Merchants from any other incidental source. Thus, for Federal income tax purposes, Merchants could never show a profit or a loss.

In order for a taxable gain to be realized or a deductible loss to be sustained, property must in general be sold, abandoned, discarded, or otherwise disposed of. Just as the appreciation in value of property without its disposition does not result in a taxable gain, similarly the mere shrinkage in value of property does not constitute a deductible loss. *Gulf Power Co.*, 10 T. C. 852; *C. F. Mueller Co.*, 40 B. T. A. 195; *White Star Line*, 20 B. T. A. 111. In effect, petitioner is claiming a loss upon the diminution in value of certain of its fixed assets. The fact that the write-down which reflected the shrinkage in value was accomplished through the medium of a "sale" to its wholly owned subsidiary, Merchants, does not, under the doctrine of *Higgins* v. *Smith, supra,* effect a change in its essential nature from that of an accounting entry designed to account for the diminution in value of assets still controlled by petitioner. It makes no difference that the write-down was pursuant to a recommendation of the Comptroller of the Currency. See *Gulf Power Co., supra,* with respect to accounting rules and orders of the Federal Power Commission; *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552, and *Gulf, Mobile & Northern R. Co.* v. *Commissioner,* 83 Fed. (2d) 788, with respect to accounting rules and orders of the Interstate Commerce Commission; and *National Airlines, Inc.,* 9 T. C. 159, with respect to accounting rules and orders of the Civil Aeronautics Board.

The facts clearly show that there is no substance to the sale of the branch banks by petitioner to its wholly owned subsidiary. Petitioner had complete domination and control over Merchants, and the properties in the hands of Merchants were as much subject to petitioner's control as they were while legal title was in petitioner's own name. *Higgins* v. *Smith, supra; Sidney M. Shoenberg, supra; Thal* v. *Commissioner,* 142 Fed. (2d) 874; cf. *Corliss* v. *Bowers,* 281 U. S. 376. In effect and substance Merchants was no more than the alter ego of petitioner, and "no loss could occur upon a sale by a taxpayer to such an entity."

The respondent's determination is sustained.

*Decision will be entered under Rule 50.*