BELLEFONTAINE FEDERAL SAVINGS AND LOAN ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64131, 76910. Filed February 5, 1960.

*Clarence C. Roby, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* The respondent determined deficiencies in the income tax of petitioner as follows:

| Taxable year | Deficiency |
| --- | --- |
| 1952 | $2,639.24 |
| 1953 | 6,837.83 |
| 1954 | 5,200.00 |
| 1955 | 25,313.24 |
| 1956 | 14,742.29 |

Respondent, by amended answer, claims an increased deficiency for the year 1953 in the amount of $1,637.83.

The sole issue is whether petitioner is entitled to deductions for additions to a reserve which it was required to make under regulations of the Federal Home Loan Bank Board. All of the facts have been stipulated.

The principal office of petitioner is located in Bellefontaine, Ohio. It was organized under the laws of Ohio in 1894, and, in December 1937 was reorganized to become a Federal savings and loan association chartered under the Home Owners' Loan Act of 1933. Substantially all of its business is the making of loans to members.

Federal income tax returns for the years 1952 through 1956 were filed by petitioner with the district director of internal revenue, Toledo, Ohio. Prior to 1952 petitioner was exempt from Federal income tax.

Petitioner has Federal insurance coverage, the effective date of which was August 9, 1935, and it is governed by regulations of the Federal Home Loan Bank Board. Section 163.13 of those regulations requires each insured institution not only to credit annually to its Federal insurance reserve account an amount equal to at least three-tenths of 1 per cent of all insured accounts outstanding at the beginning of its fiscal year, but also to build up that reserve to an amount equal to at least 2½ per cent of all insured accounts within 13 years from the effective date of insurance and to an amount equal to at least 5 per cent of all insured accounts within 20 years from such date. Amounts so credited to petitioner's insurance reserve could be used solely for the purpose of absorbing losses.

In each of the years 1952, 1953, and 1954 petitioner added $10,000 [1] to its Federal insurance reserve account and deducted that amount in its Federal income tax returns for those years in determining its taxable net income. The Commissioner disallowed the deductions.

The Federal insurance reserve account on the books of petitioner at the beginning of each of the years 1952 through 1956 and at the end of the year 1956 reflected the following credit balances:

| | |
|---|---|
| Jan. 1, 1952 | $215,000.00 |
| Jan. 1, 1953 | 225,000.00 |
| Jan. 1, 1954 | 235,000.00 |
| Jan. 1, 1955 | [2] 221,012.60 |
| Jan. 1, 1956 | 283,678.53 |
| Dec. 31, 1956 | 311,769.10 |

Petitioner's insured accounts at the close of 1955 and 1956 showed the following balances:

| | |
|---|---|
| Dec. 31, 1955 | $5,673,570.60 |
| Dec. 31, 1956 | 6,235,381.98 |

[1] Petitioner credited $10,000 to the reserve "in lieu of" using an amount exactly equal to three-tenths of 1 per cent of the insured accounts at the beginning of each of the 3 years, namely, $11,373.80, $12,200.73, and $13,260.76.

[2] The reduction in the credit balance occurring between Jan. 1, 1954, and Jan. 1, 1955, and the increases in the balance thereafter were explained in the stipulation of the parties as follows: "After the dispute arose concerning what additions to the Federal insurance reserve account would be allowable, the taxpayer returned the account to the balance which was reflected therein at the time taxpayer became subject to income taxes. Then, since the taxpayer achieved the 20th anniversary date of Federal insurance coverage in 1955, such additions as were required to maintain the reserve account at 5% of all insured accounts were made starting at the end of 1954."

Since the 20th anniversary of petitioner's inclusion in Federal insurance coverage occurred in 1955, the required additions to its Federal insurance reserve account for 1955 and 1956 were $62,665.93 and $28,090.57, respectively, computed as follows:

### 1955

| | |
|---|---:|
| 5 per cent of all insured accounts | $283,678.53 |
| Actual reserve balance | 221,012.60 |
| Required addition | 62,665.93 |

### 1956

| | |
|---|---:|
| 5 per cent of all insured accounts | $311,769.10 |
| Actual reserve balance | 283,678.53 |
| Required addition | 28,090.57 |

In its income tax returns for the years 1955 and 1956 petitioner took as deductions the additions to its Federal insurance reserve account in the foregoing amounts of $62,665.93 and $28,090.57, respectively, which were disallowed by the respondent.

Prior to the enactment of the Revenue Act of 1951, domestic building and loan associations, such as petitioner, substantially all of the business of which was confined to making loans to members, were exempt from tax under the provisions of section 101(4), I.R.C. 1939. This exemption was repealed by section 313(b) of the Revenue Act of 1951 effective (section 313(j)) for all taxable years beginning after December 31, 1951. And, at the same time, section 23(k) of the 1939 Code, relating to the deduction for bad debts, was amended by section 313(e) of the 1951 Act so as to read as follows (the italicized language being new material added by the 1951 Act):

(k) BAD DEBTS.—

(1) GENERAL RULE.—Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * *In the case of a mutual savings bank not having capital stock represented by shares, a domestic building and loan association, and a cooperative bank without capital stock organized and operated for mutual purposes and without profit, the reasonable addition to a reserve for bad debts shall be determined with due regard to the amount of the taxpayer's surplus or bad debt reserves existing at the close of December 31, 1951. In the case of a taxpayer described in the preceding sentence, the reasonable addition to a reserve for bad debts for any taxable year shall in no case be less than the amount determined by the taxpayer as the reasonable addition for such year; except that the amount determined by the taxpayer under this sentence shall not be greater than the lesser of (A) the amount of its net income for the taxable year, computed without regard to this subsection, or (B) the amount by which 12 per centum of the total deposits or withdrawable accounts of its depositors at the close of such*

*year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year.*

The new material was thereafter incorporated in substance in section 593 of the 1954 Code, and the substance of the original provisions was carried over to section 166 of the 1954 Code.

The new provisions relate directly and explicitly to the petitioner, and it becomes pertinent to inquire at once whether "12 per centum of the total deposits or withdrawable accounts of its depositors at the close of such [taxable] year exceeds the sum of its surplus, undivided profits, and reserves at the beginning of the taxable year."

The amounts in question for each of the taxable years are shown in the following table:

| Year | Withdrawable accounts as of close of year | 12 per cent of withdrawable accounts at close of year | Surplus, un-divided profits, and reserves at beginning of year |
|---|---|---|---|
| 1952 | $4,126,695.37 | $495,203.44 | $601,616.54 |
| 1953 | 4,580,776.03 | 549,693.12 | 657,209.44 |
| 1954 | 4,915,888.07 | 589,906.57 | 712,168.73 |
| 1955 | 5,860,814.60 | 704,377.75 | 746,016.60 |
| 1956 | 6,401,567.15 | 768,188.06 | 788,845.01 |

It is readily apparent from this table that 12 per cent of petitioner's withdrawable accounts did not exceed the sum of its surplus, undivided profits, and reserves at the critical dates for any of the years in controversy. Thus, if deductibility were to be determined pursuant to the new provisions added by the 1951 Act, petitioner would automatically fail to qualify for the deductions in question, even if it be assumed that the reserve in question is a "reserve for bad debts" within the meaning of the statute. The statutory formula is specific, and the stipulated facts do not bring petitioner within that formula.

Indeed, petitioner recognizes in its brief that "the Internal Revenue Code does not permit any deduction for an addition to a Federal insurance reserve account when the existing surplus, undivided profits and reserves at the beginning of the year equal 12 percent or more of withdrawal accounts at the year end." Its *sole* contention is that "there is a conflict between the rules and regulations of * * * [the Home Loan Bank Board] and the Internal Revenue Code and that this conflict should be resolved by permitting the petitioner to deduct from gross income mandatory additions made to a Federal insurance reserve account when arriving at net taxable income for Federal income tax purposes." This contention is without merit, since it has been consistently held that the accounting requirements of regulatory agencies are not controlling in the application of the revenue laws, which establish their own standards. *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552, 562; *Kansas City Southern Ry. Co.* v. *Commis-*

*sioner*, 52 F. 2d 372, 378 (C.A. 8); *Toledo Terminal Railroad Co.*, 13 T.C. 64, 75; *Gulf Power Co.*, 10 T.C. 852, 858; *National Airlines, Inc.*, 9 T.C. 159, 161.

Thus, the matter would seem to end but for a concession made by the Government (in its reply brief) that notwithstanding petitioner's failure to qualify for deduction under the new provisions, it might nevertheless be eligible for deduction under the general provisions of section 23(k)(1), quoted above, that were left undisturbed by the new legislation. This belated concession, which does not seem to be required by a reading of the statute, finds support in the Conference Report accompanying the 1951 legislation, where it was stated (H. Rept. No. 1213, 82d Cong., 1st Sess., pp. 73–74):

Where the sum of the institution's surplus, undivided profits, and reserves at the beginning of the taxable year equals or exceeds 12 percent of its total deposits or withdrawable accounts at the close of such year, any deduction for such year for a reasonable addition to a reserve for bad debts will be determined under the general provisions of section 23(k)(1).[3]

The Government argues nevertheless that although the general provisions dealing with additions to bad debt reserves are applicable, petitioner has failed to bring itself within them.

But petitioner has never made any such alternative contention based upon the general provisions of section 23(k)(1) of the 1939 Code or the cognate provisions of section 593 of the 1954 Code; that issue is not properly before us, and we are not required by respondent's concession to embark upon an inquiry as to whether petitioner satisfies the requirements of statutory provisions that were not heretofore in controversy and upon which petitioner has not relied.

Moreover, even if we were to consider that issue, the record would not support any claim to deduction of the amounts in question as a "reasonable addition to a reserve for bad debts." Under the statute a taxpayer is allowed a deduction for losses actually sustained by reason of bad debts, and alternatively a deduction for "reasonable" additions to a bad debt reserve. The burden is upon the taxpayer to show that the additions are "reasonable." Whether additions are "reasonable" may depend upon a variety of facts, such as its actual bad debt experience. But, as pointed out by respondent, an examination of petitioner's returns for the 5 years in controversy shows that no amounts were charged against the reserve for bad debt losses, thus disclosing that petitioner's bad debt experience during these years was nil. And there is also nothing to show that its bad debt experience for years prior thereto was other than negligible. The reserve maintained by petitioner was substantial and we cannot say on this record

---

[3] The same thought is also reflected in section 39.23(k)–5(b)(4) of Regulations 118 and section 1.593–2 of regulations under the Internal Revenue Code of 1954.

that any further additions in respect of bad debts were "reasonable." It is to be noted further that the reserve in question was not limited to bad debts. The requirements of the Home Loan Bank Board regulations which were obviously calculated to promote the solvency of institutions like petitioner and to protect the interests of depositors related to losses generally and were not confined to bad debt losses. There is no provision in the statute allowing deductions with respect to reserves for losses generally, and even assuming that additions for bad debts to a general loss reserve might otherwise be deductible, nothing in this record establishes that *any* addition to a proper reserve for bad debts, already at a high level, would be "reasonable." *Mitchell-Huron Production Credit Ass'n* v. *Welsh*, 163 F. Supp. 883 (D. S.Dak.), relied upon by petitioner in connection with the only issue raised by it, is distinguishable on its facts in relation to the foregoing discussion.

*Decisions will be entered for the respondent.*