HANOVER INSURANCE COMPANY SUCCESSOR IN INTEREST TO:
MASSACHUSETTS BONDING AND INSURANCE COMPANY,
PETITIONER .V. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 1557-71.    Filed January 7, 1976.

*Paul A. Teschner,* for the petitioner.
*Willard J. Frank* and *Justin S. Holden,* for the respondent.

### OPINION

DAWSON, *Chief Judge:* This case was assigned to Special Trial Judge Lehman C. Aarons (pursuant to Rule 180 et seq. of the Tax Court Rules of Practice and Procedure) to conduct the trial thereof or otherwise proceed in accordance with said Rules. This Court agrees with and adopts his opinion, set forth below, on petitioner's Motion for Summary Judgment.[1]

### OPINION OF THE SPECIAL TRIAL JUDGE

AARONS, *Special Trial Judge:* This case is presently before the Court on petitioner's Motion for Summary Judgment, filed September 8, 1975. Because of the importance of the legal question involved, the Court felt justified in entertaining

---

[1] Since this is a pretrial motion for summary judgment and since, solely for purposes of this motion, it has been assumed (as hereinbelow set forth) that there is no genuine issue of material fact, the Court has concluded that the posttrial procedures of Rule 182, Tax Court Rules of Practice and Procedure, are not applicable in these particular circumstances. This conclusion is based on the authority of the "otherwise provided" language of that rule.

petitioner's motion even though a delay in the trial was thereby entailed.

Petitioner is a casualty insurance company having its principal office in Massachusetts. The returns for the years involved were filed with the District Director, Boston, Mass. Such returns were for the calendar years 1959 and 1960 and for the period ending June 30, 1961, and were filed by Massachusetts Bonding & Insurance Co. (hereinbelow referred to as taxpayer). Taxpayer was merged into Hanover Insurance Co. (the petitioner herein) as of June 30, 1961.

Taxpayer was taxable under sections 831 and 832 of the Internal Revenue Code of 1954, as amended. Section 832 provides, in part:

(b) DEFINITIONS.—In the case of an insurance company subject to the tax imposed by section 831—

(1) GROSS INCOME.—The term "gross income" means the sum of—

(A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners * * *

Substantially the same provisions have existed in predecessor statutes since 1921.

Since 1944, the regulations (as now embodied in sec. 1.832-4(b), Income Tax Regs., and hereinbelow referred to as the challenged regulation) have provided substantially as follows:

(b) Every insurance company to which this section applies must be prepared to establish to the satisfaction of the district director that the part of the deduction for "losses incurred" which represents unpaid losses at the close of the taxable year comprises only actual unpaid losses stated in amounts which, based upon the facts in each case and the company's experience with similar cases, can be said to represent a fair and reasonable estimate of the amount the company will be required to pay. Amounts included in, or added to, the estimates of such losses which, in the opinion of the district director are in excess of the actual liability determined as provided in the preceding sentence will be disallowed as a deduction. The district director may require any such insurance company to submit such detailed information with respect to its actual experience as is deemed necessary to establish the reasonableness of the deduction for "losses incurred."

Acting under these regulations, the revenue agent, in auditing taxpayer's returns for the taxable years and period here involved determined that "losses incurred" had been overstated for each

such year and for such period. In his amended answer, respondent additionally determined that "loss adjustment expense" had been understated on each of taxpayer's said returns. Other adjustments made on audit are not in issue.

For purposes of this motion for summary judgment it will be assumed that discrepancies between "losses incurred" and "loss expense incurred" as set forth in the annual statement on the one hand and the tax returns on the other hand do not raise issues of material fact. Although as shown by the affidavit filed by petitioner in support of its motion such discrepancies did exist, they did not in any case exceed approximately 1 percent of the respective amounts shown on the annual statement. Moreover, such affidavit indicates that "unpaid losses outstanding" and "unpaid loss expenses outstanding" (which appear to be the crucial disputed components in "losses incurred" and "loss expense incurred") were in identical amounts on taxpayer's annual statements and its tax returns. Solely for purposes of the Motion for Summary Judgment the correctness of this affidavit will be assumed.

In contrast, of course, the statutory notice of deficiency does raise issues of material fact, but petitioner maintains that under the statute and existing case law the annual statement is legally binding and conclusive upon respondent and that the challenged regulation (pursuant to which the respondent acted in making the disputed adjustments) is invalid under the Constitution and also under the McCarran-Ferguson Act (15 U.S.C. secs. 1011-1015) which confirmed to the States exclusive jurisdiction to regulate insurance companies.

At this point it should be noted that "losses incurred" and "expenses incurred" are (and have been for many years before the years here involved) also defined in the statute as elements or components of the term "underwriting income," which in turn is one of the terms used in defining "gross income" in section 832(b)(1), above quoted. See sec. 832(b)(3), (5), and (6). One of the elements in "losses incurred" is "unpaid losses" at the end of the year. Sec. 832(b)(5)(B). Similarly, one of the elements of "expenses incurred" is "expenses unpaid" at the end of the year. Sec. 832(b)(6). The determination of "unpaid losses" and "expenses unpaid" involves the making of estimates and it is the reasonableness of such estimates which the respondent is challenging in this case. These terms are terms of insurance art

and constitute annual statement terminology. See *Bituminous Casualty Corp.,* 57 T.C. 58, 80 (1971).

The history of sections 831 and 832, and the reasons prompting Congress to turn to the annual statement for the computation of insurance company income for Federal tax purposes, are set forth in *New Hampshire Fire Insurance Co.,* 2 T.C. 708 (1943), affd. 146 F.2d 697 (1st Cir. 1945), and need not be repeated here. See also *Bituminous Casualty Corp., supra* at 79, 80, reviewing the development of the case law and observing that the Fourth Circuit (*United States v. Fidelity & Deposit Co.,* 177 F.2d 805 (4th Cir. 1949)), agreed with the First Circuit *(New Hampshire Fire Insurance Co., supra)* that Congress intended to follow the annual statement form "precisely" in respect to the items specified (which include "losses incurred" and "expenses incurred"), whereas the Second Circuit (*Commissioner v. General Reinsurance Corp.,* 190 F.2d 148 (2d Cir. 1951)) and the Ninth Circuit (*Pacific Employers Ins. Co. v. Commissioner,* 89 F.2d 186 (9th Cir. 1937), and *Pacific Ins. Co. v. United States,* 188 F.2d 571 (9th Cir. 1951)), held that the annual statement was intended to serve only as a guide and was not to be binding where inconsistent with the ordinary meaning of the terminology.

The primary rationale for adhering conclusively to the annual statement was the extreme complexity and technicality of insurance industry accounting and the search by Congress for an easy and simple taxing method. It is also to be noted, as petitioner points out, that in upholding the specialized type of accounting embodied in the annual statement, the courts have adopted a "long run" approach as an exception to the annual accounting principle (see *Security Flour Mills Co.,* 321 U.S. 281 (1944)). Indeed, in the First Circuit decision in *New Hampshire Fire Insurance Co., supra,* the court states in so many words that returns based on the convention form do not truly reflect income. But one of the counterbalancing considerations cited by that court was that "in the long run" it will not make any difference whichever method is used. Here too (although petitioner's briefs do not contain an analysis on this point) it may be that this could be true since an overstatement of "unpaid losses" and "expenses unpaid" at the end of the year might eventually be adjusted by the amount of losses and expenses actually paid in an ensuing year.

Aside from the fact that the First Circuit decision in *New Hampshire Fire Insurance Co., supra,* represents an affirmance of this Court's decision, the instant case is appealable to the First Circuit and we would feel bound by *New Hampshire Fire Insurance Co.,* if the issue of the validity of the challenged regulation (which was not in effect in the years there involved) were not inescapably involved in this motion. *Jack E. Golsen,* 54 T.C. 742 (1970). To apply *Golsen* to this motion would entail our speculating and concluding that the First Circuit's blessing of the convention form in *New Hampshire Fire Insurance Co.* was tantamount to a sanctification of the estimated figures as well as the form itself, no matter how unfair or unreasonable, and that the respondent's regulation of 31 years' vintage represents an invalid trespass into this hallowed area.

None of the cases cited above, nor any case cited to us, directly involved the validity of the challenged regulation. It appears that such validity was bolstered by this Court's opinion in *Bituminous Casualty Corp., supra,* in holding invalid the "all events" test embodied in Rev. Rul. 67-225, 1967-2 C.B. 238, as being contrary to the "legislative history" of the regulations with reference to the determination as to when a "liability" exists (see also Rev. Rul. 73-302, 1973-2 C.B. 220), and in finding that the reserves involved in that case "were computed in a reasonable manner." 57 T.C. at 58, 82. Moreover, the cited cases which held the annual statement to be conclusive did not involve the reasonableness of the estimated figures appearing on such statement, but rather the format or methodology of such statement (e.g., whether or not reinsurance transactions with unadmitted companies should be taken into account *(New Hampshire Fire Insurance Co., supra),* or e.g., whether contrary to the then requirement of the annual statement form, the "case method" rather than the "formula method" could be used by the Internal Revenue Service where the former resulted in a lower unpaid loss figure (see *Columbia Casualty Co.,* a Memorandum Opinion of this Court dated May 13, 1948 (7 T.C.M. 282)).

In any event, we feel that we would be remiss in failing to apply to this case "the settled principle that 'Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.' *Helvering v. Winmill,* 305 U.S. 79, 83; *Fribourg*

*Nav. Co. v. Commissioner,* 383 U.S. 272, 283." *United States v. Correll,* 389 U.S. 299, 305 (1967). See also *Commissioner v. Noel Estate,* 380 U.S. 678 (1965).

In addition to the reasons above set forth, we note the apparent fact that the affected industry, rather than contesting such validity at or about the time the challenged regulation was promulgated, adapted its practices to such regulation. The "apparent fact" referred to is not part of the record herein but has been called to the Court's attention by the excerpt quoted on page 23 of petitioner's reply brief from the Government's application for an extension of time within which to file petition for writ of certiorari in *United States v. Fidelity & Deposit Co. of Maryland,* 177 F.2d 805 (4th Cir. 1949).

A portion of that application for extension of time, which follows directly after the portion quoted in petitioner's reply brief, reads:

> However, we are informed that there has been scheduled for the first week of April, 1950, a meeting of the Committee on Blanks of the National Association of Insurance Commissioners to which recommendations will be submitted by certain groups in the insurance industry to amend the convention form of annual statement to conform to the predominant tax treatment of certain items involved in these tax controversies. If the convention form of annual statement is satisfactorily revised to meet the Treasury Department's objections applicable to 1950 and future years, the Government would not wish to ask for certiorari in these cases. Hence, the extension herein is sought to protect the Government's interests pending the action of the Convention of Insurance Commissioners, and thus to avoid burdening this Court with a petition for certiorari that might not otherwise be filed.

(See Tye, "The Convention Form and Insurance Company Tax Problems," 6 Tax L. Rev. 245 (1951)). That article, in addition to quoting the above application for extension of time states that (effective in 1950) the "Convention Form" was amended by the National Association of Insurance Commissioners so that thereafter Schedule P incurred losses would be set forth in the underwriting exhibit purely on the basis of "case estimates." Such incurred losses had theretofore been reflected on the exhibit on a "formula" method if it produced a higher figure than the "case" method. After the 1950 change in the convention form any excess in incurred losses under the "formula" method was treated as a surplus adjustment on the statement rather than an income adjustment. The challenged regulation likewise requires the application of the "case" method.

While normally the attitude of an affected industry might not be relevant in the case of a challenge by one of its members as to the validity of a regulation, the situation here is a unique one. The statute itself prescribes that the affected industry's approved form (as approved by the State regulatory authorities) shall be the basis on which income is determined, and thus a change in such form effectively becomes a change in the applicable law. Because of this unique interrelationship, the apparent adaptation of industry financial reporting to the concept of the challenged regulation would seem to lend additional support to the validity of the regulation.

Petitioner has additionally raised the question whether the challenged regulation is violative of the McCarran-Ferguson Act, 15 U.S.C. secs. 1011-1015 (Mar. 9, 1945), as an attempt to regulate the insurance industry in contravention of the following express congressional intent:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. 15 U.S.C.§ 1012(b).

As can be gleaned from the legislative history of that Act (H. Rept. No. 143, 79th Cong., 1st Sess. (1945)) the business of insurance had traditionally been regarded as a local matter properly subject to and regulated by State laws. However, the Supreme Court in *United States v. South-Eastern Underwriters Association,* 322 U.S. 533 (1944), had held that the business of insurance was commerce and therefore subject to the Sherman Act. Subsequently, considerable uncertainty arose with respect to the constitutionality of State tax laws as well as other State regulatory provisions applicable to insurance companies. To alleviate this confusion the McCarran-Ferguson Act contained the provision as set forth in the above excerpt; and also suspended for a 3-year period the application to insurance companies of the Sherman, Clayton, and Federal Trade Commission Acts (except to the extent that the business of insurance was not regulated by State law). See *Securities & Exchange Commission v. Variable Annuity Life Insurance Co. of America,* 359 U.S. 65 (1959).

The application of Federal law to insurance companies, including the Federal income tax (although it uses the annual statement as a basis for the tax), is not inconsistent with the intent of Congress to refrain from interfering with State

regulation of insurance companies. Cf. *State Board of Insurance v. Todd Shipyards Corp.,* 370 U.S. 451 (1962); *United States v. Sylvanus,* 192 F.2d 96 (7th Cir. 1951), cert. denied 342 U.S. 943 (1952). Congress did not, under the McCarran-Ferguson Act, surrender to the States the power of the Federal Government to tax insurance companies and to issue regulations implementing the taxing statute. *Industrial Life Insurance Co. v. United States,* 344 F. Supp. 870 (D. S.C. 1972), affd. 481 F.2d 609 (4th Cir. 1973), cert. denied 414 U.S. 1143 (1974). In the latter case, the taxpayer asked the court to invalidate Treasury regulation section 1.801-3(a) defining an "insurance company" for purposes of taxation under the Internal Revenue Code as contrary to the McCarran-Ferguson Act. The court declined to do so finding that the regulation reasonably implemented the power of Congress to tax insurance companies.

The crucial question in this regard is whether the regulation challenged in the instant case implements the statute in a reasonable manner, and does not take away an intended benefit. *The National Life & Accident Insurance Co. v. United States,* 524 F. 2d 559 (6th Cir. 1975). The intended benefit, as we understand petitioner's argument, is the right of the taxpayer to be "regulated" by the States (including, in particular, the right to follow State-imposed accounting requirements for all purposes including Federal income taxation).

In a sense all taxation is "regulation" in that it imposes sanctions if prescribed paths of conduct are not followed. But in the narrower sense it has consistently been held that accounting requirements of a regulatory authority (as in the case of savings and loan associations (*Bellefontaine Federal Savings & Loan Association,* 33 T.C. 808 (1960)); of railroads (*Old Colony R.R. Co. v. Commissioner,* 284 U.S. 552 (1932)); of power companies (*Gulf Power Co.,* 10 T.C. 852 (1948)); and of airlines (*National Airlines, Inc.,* 9 T.C. 159 (1947)), must yield to the requirements imposed under Treasury regulations. In other words, because a savings and loan association must file one set of figures with the Home Loan Bank Board, another with the State regulatory authority, and a third with the Internal Revenue Service, the latter agency has not thereby usurped the regulatory authority of the first two. Much less, it seems to us, can a regulated taxpayer claim such usurpation, when all that the Treasury regulation attempts to do is to determine whether the figures representing

estimates are fair and reasonable. What petitioner's argument would lead us to conclude is that McCarran-Ferguson Act would tie the Federal income tax to estimates which could be unfair and unreasonable because to question such estimates for Federal tax purposes would be tantamount to "regulation." We cannot so conclude and in our view the challenged regulation reasonably implements section 832 and does not take away any true benefit which the statute was intended to confer.

The brief answer to petitioner's argument that the challenged regulation intruded upon an area of regulation which belongs to the States is set forth in the following excerpt from *Penn Mutual Indemnity Co.,* 32 T.C. 653, 658 (1959), and the cases cited therein:

Whether the business of the taxpayer can be subjected to Federal regulation has no bearing upon the validity of an exercise of taxing power with respect to that taxpayer. *Steward Machine Co. v. Davis,* 301 U.S. 548, 582; *Flint v. Stone Tracy Co.,* 220 U.S. 107, 152-158.

The "exercise of taxing power" necessarily encompasses the authority to issue needful regulations. Sec. 7805, I.R.C. 1954; *Brushaber v. Union Pacific Railroad Co.,* 240 U.S. 1 (1916). We find that a regulation which permits the respondent to disallow a deduction based upon an estimate which is unfair or unreasonable is indeed "needful."

In sum, we have carefully considered all of petitioner's contentions in support of its Motion for Summary Judgment and have determined that the motion must be denied.

*An appropriate order will be entered.*