**PACIFIC INS. CO., Limited, v. UNITED STATES.**

**Civ. A. No. 861.**

United States District Court
D. Hawaii.

May 5, 1950.

Smith, Wild, Beebe & Cades, Milton Cades, Honolulu, T. H., for plaintiff.

Theron Lamar Caudle, Assistant Attorney General, Homer R. Miller, Andrew D. Sharpe, Special Assistants to the Attorney General, Ray J. O'Brien, United States Attorney, District of Hawaii, Honolulu, T. H., for defendant.

McLAUGHLIN, District Judge.

### 1. The Facts

The facts in this case have been stipulated. The plaintiff taxpayer is an Hawaiian corporation, and is an insurance company "other than life or mutual," as defined in section 204 of the Internal Revenue Code, infra, 26 U.S.C.A. § 204.

The plaintiff has regularly and consistently determined its taxable net income

under the provisions of section 204, its books being kept and its tax returns made on the accrual method of accounting and on a calendar year basis.

In making its annual statements of financial condition to the Insurance Commissioner of the Territory of Hawaii, as required by the laws of the Territory,[1] the plaintiff has consistently used the form of annual statement approved by the National Association of Insurance Commissioners, Convention Edition, hereinafter referred to as the "Convention Form."

The plaintiff, within the time and in the manner prescribed by law, filed its income tax and excess profits tax returns for the year 1942, and paid the tax shown thereon in the amounts of $4,927.91 income tax and $5,033.78 excess profits tax, a total of $9,961.69, to Fred H. Kanne, then Collector of Internal Revenue for the District of Hawaii, who died prior to the bringing of this action.

The Convention Form, required to be filed by the plaintiff annually, prescribes that liability and workmen's compensation losses unpaid and outstanding at the end of the year be computed and reported on all open cases under policies issued more than three years prior to the date of the report by estimating the amount thereof according to appraisals made in each case, and, on all other open cases, at the higher of the following amounts, an amount estimated according to appraisals made in each case, or an amount equal to the excess of a fixed percentage of the premiums earned under all policies in force over the losses paid and loss expenses paid.

In filing its 1942 Convention Form, the plaintiff showed a reserve for unpaid losses based upon the individual case estimate method, and did not comply with the requirements of the Convention Form in computing and reporting the larger reserves which would have resulted from a calculation if made in accordance with the requirements of the Convention Form.

Thereafter, an audit was made of the plaintiff's books by the Bank Examiner of the Territory of Hawaii under the direction of the Insurance Commissioner. In the Examiner's report it was asserted that the surplus of the company was overstated by the amounts necessary to establish the statutory reserves for unpaid compensation and liability losses, and that the procedure to be used in determining the reserves could be found on pages 25–29 of the Convention Form.

The plaintiff later increased its reserves in conformity with the requirements of the Convention Form. Again the calculations were not properly made. The proper amount of such reserves would have been, as of December 31, 1942, according to the stipulation, $2,525.33 for liability losses and $11,519.25 for workmen's compensation losses.

Finally, the plaintiff filed with the Collector of Internal Revenue a claim for refund, attaching thereto an amended income and excess profits tax return that was exactly like the original return except that there was an additional deduction claimed, marked "additional statutory reserves," with changed computations of tax liability resulting from the additional deduction.

The above tax return was thereafter audited by an Internal Revenue agent. He stated in his report that the plaintiff had been required by the Territorial Insurance Commissioner to provide a statutory reserve for possible losses arising out of outstanding policies, and that it had filed a timely claim for refund for the year 1942 claiming additions to the reserves in the year as an additional allowable deduction; but that, because the reserve was a contingent reserve, additions to it do not constitute an allowable deduction for income tax purposes. The claim was therefore rejected.

The Commissioner of Internal Revenue accordingly sent the plaintiff a notice of the disallowance of the claim for a refund. The present suit was brought for the ex-

[1] Section 6810, Revised Laws of Hawaii, 1935, as amended by Act 263, Session Laws of Hawaii, 1939; carried over in Revised Laws of Hawaii, 1945, as Section 8482.

cess taxes that, it is claimed, have been paid by reason of the failure to allow, as a deduction, the additions to the statutory reserves for losses.

## 2. The Applicable Statute

Section 204 of the Internal Revenue Code, 26 U.S.C.A. § 204, reads in part as follows:

"§ 204. *Insurance companies other than life or mutual*

"(a) *Imposition of tax.*

"(1) *In general.* There shall be levied, collected, and paid for each taxable year upon the normal-tax net income and upon the corporation surtax net income of every insurance company (other than a life or mutual insurance company) * * *

"(b) *Definition of income, etc.* In the case of an insurance company subject to the tax imposed by this section—

"(1) *Gross income.* 'Gross income' means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from under-writing income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property, and (C) all other items constituting gross income under section 22; * * *

"(2) *Net income.* 'Net income' means the gross income as defined in paragraph (1) of this subsection less the deductions allowed by subsection (c) of this section; * * *

"(4) *Underwriting income.* 'Underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

"(5) *Premiums earned.* 'Premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year. * * *

"(6) *Losses incurred.* 'Losses incurred' means losses incurred during the taxable year on insurance contracts, computed as follows:

"To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year;

"(7) *Expenses incurred.* 'Expenses incurred' means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows:

"To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by subsection (c) of this section.

"(c) *Deductions allowed.* In computing the net income of an insurance company subject to the tax imposed by this section there shall be allowed as deductions:

"(1) All ordinary and necessary expenses incurred, as provided in section 23(a);

"(2) All interest as provided in section 23(b);

"(3) Taxes as provided in section 23(c);

"(4) Losses incurred as defined in subsection (b) (6) of this section;

"(5) *Capital Losses.* Capital losses to the extent provided in section 117 plus losses from capital assets sold or exchanged in order to obtain funds to meet abnormal insurance losses and to provide

for the payment of dividends and similar distributions to policyholders. * * *"

### 3. The Question Presented

The only issue here presented is whether the deduction by an insurance company of this type for losses incurred in 1942 should be allowed in the amount required to be included in the unpaid and outstanding losses appearing on the Convention Form, or whether the deduction for losses incurred should be determined according to the so-called "individual case estimate method."

In other words, in determining its underwriting income under section 204(b) (4), supra, may such an insurance company deduct from earned premiums, reserves computed according to the Convention Form?

### 4. Our Court of Appeals Has Definitely Held That the Individual Case Method Should Be Followed

The precise question now before this Court was presented to the Court of Appeals for the Ninth Circuit in Pacific Employers Ins. Co. v. Commissioner of Internal Revenue, 9 Cir., 89 F.2d 186, 187, as may be seen from the following excerpt from the opinion in that case:

"Petitioner (the insurance company) contends that since section 204 * * * provides that 'underwriting income as provided in this subsection, (should be) computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners,' the portions of the subsection specifying the items to be used in computing such 'underwriting income' by implication carry with them the provision relating to the 'underwriting and investment exhibit of the annual statement'; that therefore the amounts of the items mentioned in the statute are to be determined by the amounts contained in such exhibit.

"Article 992 of Regulations 74, promulgated under the Revenue Act of 1928 [45 Stat. 791], provides in part: '* * * The underwriting and investment exhibit is presumed clearly to reflect the true net income of the company, and in so far as it is not inconsistent with the provisions of the Act will be recognized and used as a basis for that purpose. All items of the exhibit, however do not reflect an insurance company's income as defined in the Act. * * *'

"Petitioner's contention is untenable. The provision (section 204(b) (1), 26 U.S. C.A. § 204(b) (1) and note) mentioning the 'exhibit' is general, and relates to the entire subject of 'investment income' and 'underwriting income.' Another provision (section 204(b) (6), 26 U.S.C.A. § 204(b) (6) and note) has specific reference to one deduction to be made in computing 'underwriting income.' The general must succumb to the specific. Murphy Oil Co. v. Burnet, 9 Cir., 55 F.2d 17, 25, affirmed 287 U.S. 299, 53 S.Ct. 161, 77 L.Ed. 318. The statute (section 204(b) (6)) setting the measure of the deduction of 'losses incurred' is therefore paramount. The regulation is not contrary to that construction.

"The amount of 'losses incurred' shown by the exhibit is established to be a reserve. While the amount of a reserve set up in the exhibit might coincide with the amount of 'losses incurred' as computed according to the statute (section 204(b) (6)), the mere fact that the reserve is designated for 'losses incurred' does not establish that the amount of such reserve is the amount of 'losses incurred' within the meaning of the federal statute. A reserve might be set up for payment of losses which may or may not happen in the future, but the amount thereof is not, conceivably, a 'loss incurred.' No showing is here made that the reserve shown by the exhibit is actually the amount of 'losses incurred,' specified in the federal statute. Reliance is placed entirely on the contention hereinabove mentioned." (Emphasis supplied.)

From the foregoing, it is clear that our Court of Appeals has held that a taxpayer is not necessarily entitled, as the plaintiff here contends, "to a deduction of reserves computed in accordance with the Convention Form in the determination of its losses which are required to be deducted from

332

its underwriting income under the statute." While the appellate court concedes that "the amount of a reserve set up in the exhibit (Convention Form) might coincide with the amount of 'losses incurred' as computed according to the statute," it is clearly indicated that there must be a "showing * * * that the reserve shown by the exhibit is actually the amount of 'losses incurred,'" according to the statute. Admittedly, no such showing has been made in the instant case.

### 5. This Court Must Follow the Method of Computation Approved by the Appellate Court

Indeed, the plaintiff tacitly concedes that the above mentioned decision of the Court of Appeals is opposed to the contention urged here. It is stoutly insisted, however, that, since "new facts are now before this Court which were not before the Court of Appeals at the time of its decision in the Pacific Employers Insurance Co. case, supra," this Court should determine whether our appellate tribunal would have decided the case differently had it possessed knowledge of the "new facts."

The "new facts" to which the plaintiff alludes apparently consist in the testimony of Dr. T. S. Adams, tax adviser of the Treasury Department, in hearings on the enactment of the Revenue Act of 1921, 42 Stat. 227, before the Senate Finance Committee. This testimony was not released for publication, it is asserted, until after the decision in the Pacific Employers Insurance Co. case, supra. In this Court's view of the situation, it would serve no useful purpose to set out the gist of the testimony.

Nor is it decisive that the Tax Court and the Courts of Appeal for the First and Fourth Circuits have held in accord with the plaintiff's contentions here.

■ The orderly administration of justice requires that an inferior court shall follow the decisions of the court which has the reviewing power. If appellate decisions need revision in view of later developments, that revision should come from the appellate court itself. If each inferior court should, according to its lights, disregard the holdings of the appellate tribunal, judicial chaos would result. Uniformity and conformity—at least within the same circuit—are virtues in the law.

Certainly, our Court of Appeals itself is the best judge of what it "would have decided" in the Pacific Employers Insurance Co. case, supra, if the "new facts" had then been before it!

### 6. Conclusion

 Accordingly, on the authority of Pacific Employers Insurance Co. v. Commissioner, supra, this Court holds that the plaintiff is not entitled to the claimed deductions. The complaint is dismissed, with costs.