## COMMISSIONER OF INTERNAL REVENUE v. GENERAL REINSURANCE CORP.

### No. 193, Docket 21837.

United States Court of Appeals
Second Circuit.

Argued April 11, 1951.

Decided June 20, 1951.

Theron Lamar Caudle, Asst.Atty. Gen., Ellis N. Slack, Lee A. Jackson and Harry Marselli, Special Assts., to the Atty. Gen., for petitioner.

Cedric A. Major, New York City, and E. Clyde Algire, Washington, D. C. (Dudley, Algire, Jones & Ostmann, Washington, D. C. of counsel), for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The respondent is a stock casualty and surety company and as such is taxed upon its income pursuant to the provisions of § 204 of the Internal Revenue Code, 26 U.S.C.A. § 204. It is a New York corporation having its principal office in the City of New York and it filed its income tax returns with the Collector for the Second District of New York. In so doing it computed its net taxable income in strict accordance with what was reflected as such on the so-called "Convention Form" which is referred to in subsection (b) (1) of § 204, I. R. C. as "the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners". It was required by New York law to report annually its business condition and operations to the Insurance Department of the State of New York and in so doing was required by that Department to compute and report its unearned premium and loss reserves without adjustment for reinsurance it had obtained in companies not authorized to transact business in New York. Such companies are known as "unadmitted" or "unauthorized" companies, and reinsurance placed with them as "unadmitted" or "unauthorized" reinsurance. Though it is as lawful to reinsure with such companies as with those licensed in New York, and though the "Convention Form" itself makes no distinction between authorized and unauthorized reinsurance, and the effect upon the respondent in reduction of risks carried is the same, regardless of whether the reinsurer is admitted, New York requires an insurance company thus reinsuring to maintain the same reserves for unearned premiums and for unpaid losses that would have been required had no unauthorized reinsurance been obtained. This is the uniform practice among similar regulatory bodies in all states, and is followed in furtherance of a uniform policy throughout the country to compel such insurers to maintain their required solvency independently of unadmitted reinsurance.

In reporting its 1944 income for taxation in strict accord with the "Convention Form" filed by it, the respondent took no account of an increase of 17,433.49 in its unearned premium reserve which was attributable to risks which had been reinsured with unadmitted companies, nor of an increase in its losses reserve of $156,163.13 representing losses incurred for which reinsurance with unadmitted companies was recoverable. For 1945, the amounts so ignored were $26,164.70 and $386,723.74 respectively. The Commissioner determined deficiencies for each taxable year by adding the above amounts to the income for such year reported by the respondent. Upon review the Tax Court expunged both deficiencies, following its own previous decisions in New Hampshire Fire Ins. Co. v. Commissioner, 2 T.C. 708, affirmed, 1 Cir., 146 F.2d 697, and in several memorandum opinions, and United States v. Fidelity & Deposit Co., 4 Cir., 177 F.2d 805, rehearing denied 4 Cir., 178 F.2d 753. The Commissioner, however, has never acquiesced in the above decisions, and seeks the reinstatement of the deficiencies in reliance upon the construction of the above statute adopted in earlier decisions of the

Tax Court (then the Board of Tax Appeals), Pacific Employers Ins. Co. v. Commissioner, 33 B.T.A. 501, affirmed, 9 Cir., 89 F.2d 186; American Title Co. v. Commissioner, 29 B.T.A. 479, affirmed, 3 Cir., 76 F.2d 332; Massachusetts Protective Ass'n v. Commissioner, 18 B.T.A. 810, and in Pacific Ins. Co. v. United States, D. C., 90 F.Supp. 328, affirmed, 9 Cir., 188 F.2d 571.

The present controversy springs from the change in the method of taxing insurance companies, other than life or mutual, made by Congress in 1921. Before then, such insurance companies had been taxed upon much the same basis as other corporations. The statutory method then devised, in recognition of the peculiar accounting difficulties inherent in the computation of the income of insurance companies for tax purposes, was substantially an adoption of the accounting scheme employed in the "Convention Form," and currently comprises Sec. 204, Internal Revenue Code. In subsection (b) (1) of that section, "gross income" is defined as the sum of three categories, the only one with which we are now concerned being (A), which is "the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners * * *." Subsequent paragraphs in this subsection, viz., (4), (5), (6), and (7), provide a definition and method of computation of "underwriting income," and the focus of this controversy is the interpretation of the statutory language to determine the effect to be given the "Convention Form" in that computation.

The Commissioner insists that the statute means that the "Convention Form" shall be taken to be the basis of the computation in the sense that it is in general the guide to be followed so long as actual net income emerges as the result. But whenever, as here, actual net income is not reflected because the figures on the "Convention Form" do not take into ac-count any unauthorized reinsurance unearned premium or loss, reserves, underwriting income must be computed according to subdivisions (4), (5), and (6) of subsection (b) of Section 204. Only in this way, it is argued, can effect be given to the intent of Congress to tax all actual income and to restrict deductions to those allowed by subsection (c) of § 204.

The respondent, supporting the decision of the Tax Court, interprets the quoted language of § 204(b) (1) to mean that its net taxable income is precisely what the "Convention Form" shows it to be, regardless of what it may in fact have been. This, so it is said, is no real departure from the general statutory purpose of income taxation to bring all actual income, less certain specifically allowed deductions, within reach of the law. It is pointed out that in the long run, as the reinsured risks are extinguished, the reserves here involved will be released to play their part in the computation of the respondent's taxable income. The over-all result will thus be to tax all actual income, though, of course, the taxation may take place in different years and so the amount of actual taxes collected may vary as the rates and the income fluctuate from period to period. Such a possible difference in the over-all tax yield might well have been discounted by Congress if its paramount purpose was to provide a simplified method of reporting income for taxation in this field of recognized accounting difficulty by accepting as conclusive the insurance companies' "Convention Form" reports to the several state departments under whose regulation their business is conducted.

But the respondent's interpretation is difficult to accept if we regard not only the particular language quoted but the whole of subsection (b) of Section 204. Paragraph (1) of that subsection refers to underwriting income "as provided in this subsection," as well as "computed on the basis of" what is herein called the "Convention Form." The general reference to the "Convention Form" should therefore be construed in the light of the preceding modification to be found in the words "as provided in this subsection," i. e., all of

subsection (b). The other pertinent provisions of the subsection embraced by these words include subdivisions (4), (5), and (6), which expressly define what Congress meant by "underwriting income" and show just how it is to be computed.[1] The computation as thus provided by the statute would take into account the taxpayer's reinsurance in "unauthorized" companies in the same way as other reinsurance and would give tax effect alike to both. This is what we think Congress intended, that is, to require the taxpayers to report their true net income for taxation, allowing them to take the "Convention Form" as their "basis" for computation. But in so far as that computation excluded factors, like the unauthorized unearned premium and loss reserves here involved, which the statutory methods of reporting income in subdivisions (5) and (6) did not exclude, we think that the specific provisions of the statute are controlling. See Pacific Employers Ins. Co. v. Commissioner, 9 Cir., 89 F.2d 186; Pacific Ins. Co. v. United States, D. C., 90 F.Supp. 328, affirmed, 9 Cir., 188 F.2d 571. It should also be noted that Sec. 20.204–2 of Treasury Regulations 111, which has long been in effect while this section of the statute has been reenacted without change, has always qualified the effect to be given the figures on the "Convention Form" by stating that, "The underwriting and investment exhibit is presumed clearly to reflect the true net income of the company, and in so far as it is not inconsistent with the provisions of the Internal Revenue Code will be recognized and used as a basis for that purpose." The construction we have reached not only gives purpose to the enactment of subdivisions (4), (5) and (6), but also accounts for their surviving other statutory changes after the promulgation of this regulation.

Moreover, the subsection itself provides other evidence that Congress did not in subdivisions (5) and (6) go to the trouble of setting up methods of computation for getting results which would merely coincide with those to be obtained by following the "Convention Form" precisely and without taking into account other pertinent factors. In subdivision (7), which defines the "expenses incurred" mentioned in subdivision (4), Congress provided that " 'Expenses incurred' means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners". Of course this provision would have been unnecessary if the language quoted from subdivision (1) meant that the "Convention Form" was to be followed precisely. In view of its express adoption for this purpose, the failure to mention the "Convention Form" in either subdivision (5) or (6) of the same subsection seems particularly significant though, of course, not decisive. We have found nothing in the legislative history which sheds any appreciable light on the problem and for the reasons stated conclude that the deficiencies were erroneously expunged.

Decision reversed and cause remanded with directions to reinstate the deficiencies.

1. "(4) Underwriting income. 'Underwriting income' means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

"(5) Premiums earned. 'Premiums earned on insurance contracts during the taxable year' means an amount computed as follows:

"From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year, and deduct unearned premiums on outstanding business at the end of the taxable year. * * *

"(6) Losses incurred. 'Losses incurred' means losses incurred during the taxable year on insurance contracts, computed as follows:

"To losses paid during the taxable year, add salvage and reinsurance recoverable outstanding at the end of the preceding taxable year, and deduct salvage and reinsurance recoverable outstanding at the end of the taxable year. To the result so obtained add all unpaid losses outstanding at the end of the taxable year and deduct unpaid losses outstanding at the end of the preceding taxable year".