The HOME GROUP, INC., as Agent Under the Provisions of Treasury Regulation Section 1.1502-77(d) for City Investing Company and the Consolidated Group of Which City Investing Company was the Common Parent, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 901, Docket 88-4155.

United States Court of Appeals, Second Circuit.

Argued March 23, 1989.

Decided May 11, 1989.

William L. Goldman, Washington, D.C. (George W. Beatty, Jane E. Wilson, and Lee, Toomey & Kent; Lester J. Mantell and Alan R. Sankin, New York City, on the brief) for appellant The Home Group, Inc.

Jonathan S. Cohen, Atty., Tax Div., Dept. of Justice, Washington, D.C. (James I.K. Knapp, Acting Asst. Atty. Gen., Gary R. Allen and Mary Frances Clark, Attys., on the brief) for appellee Commissioner of Internal Revenue.

Before OAKES, Chief Judge, TIMBERS and KEARSE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant The Home Group, Inc.[1] appeals from a decision entered August 24, 1988 in

---

1. The Tax Court proceedings were initiated by City Investing Company (City), the former common parent of an affiliated group of corporations, including The Home Insurance Company and its wholly owned subsidiary The Home Indemnity Company (collectively "Home"). These three corporations filed consolidated federal income tax returns for the years here involved.

the United States Tax Court, Joel Gerber, *Judge*,[2] which determined deficiencies totalling $20,974,856 for the tax years 1968, 1969 and 1970 in the federal income taxes of the corporate taxpayer.

Home is a property and casualty insurer which issues through its agents insurance policies, the premiums on which are payable in installments ("deferred premium installment insurance policies"). Home's agents are entitled to commissions equal to a percentage of the premiums due on the policies sold. Premiums are paid by the policyholders to the agents who deduct their commissions and remit the balance to Home. Home uses the guidelines of the National Association of Insurance Commissioners[3] when filing annual statements of financial condition in calculating its taxable income. Home deducts the entire commission to be paid to its agents as a business expense in the year in which it issues a deferred premium installment insurance policy. It defers reporting premium income until it actually is "earned".

Upon audit of the federal income tax returns for 1968–70 filed by the parent of the affiliated group of which Home was then a member, appellee Commissioner of Internal Revenue (Commissioner) disallowed deductions for unpaid future commission expenses attributable to deferred premium installment insurance policies. The Tax Court upheld this determination, relying primarily on its decision in *Western Casualty & Surety Co. v. Commissioner*, 65 T.C. 897 (1976), *aff'd*, 571 F.2d 514 (10 Cir.1978). This appeal followed.

For the reasons which follow, we affirm.

### I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal. The facts, most of which have been stipulated, are not in dispute.

Home is a property and casualty insurer. Through its independent insurance agents, it issues deferred premium installment insurance policies. Under these policies, a policyholder may pay premiums over a period of time rather than in a lump sum. Home's agents are entitled to commissions equal to a fixed percentage of the premiums due on the policies sold. Premiums are paid by the policyholders to the agents who deduct their commissions and remit the balances to Home. The deferred premium installment insurance policies may be cancelled prospectively by either the policyholder or Home. Nonpayment of premiums is not enough to cancel the policy. Until a policy is cancelled, Home remains responsible for losses covered by the policy and the policyholder remains obligated to pay the premium. If an insurance policy is cancelled, Home returns any portion of the premium it has received that is unearned on the cancellation date, less the agent's commission applicable to that portion of the premium. The agent then remits to the policyholder the full amount of the premium unearned on the cancellation date. The agent is not entitled to a commission based on any portion of the premium attributable to the period after cancellation.

Pursuant to state law, Home files annual statements of financial condition on National Association of Insurance Commissioners ("NAIC") approved forms (NAIC annual statements). These annual statements are prepared using the earned and incurred basis of accounting (known in the insurance industry and hereinafter referred to as the Statutory Method). Home also uses the Statutory Method in computing its taxable income. It deducts the entire commission to be paid to its agent as a current business expense in the year the deferred premium installment policy is issued (i.e.,

---

City has since been liquidated. The Home Group, Inc., the current common parent of the affiliated group, has been substituted as appellant on this appeal.

**2.** The Tax Court's original decision was entered January 15, 1987. 52 T.C.M. (CCH) 1422 (1987). An additional decision resolving the computa-

tion of the tax deficiencies was entered August 18, 1988. 91 T.C. 265 (1988). The final decision was entered August 24, 1988.

**3.** References to the National Association of Insurance Commissioners include references to its predecessor, the National Convention of Insurance Commissioners.

the year in which it is reported as an expense on the NAIC annual statement). It then reports its taxable income based on the premium actually "earned". The net tax effect of this procedure is to take a current deduction for unpaid expenses associated with a deferred premium which is not taken into income until later—effectively "mismatching" income and expense.

Upon audit of the consolidated federal income tax returns for the years 1968, 1969 and 1970 filed by the parent of the affiliated group of which Home was then a member,[4] the Commissioner disallowed the deductions claimed for unpaid commission expenses attributable to deferred premium installment insurance policies and issued a Notice of Deficiency dated April 15, 1982. The United States Tax Court, Joel Gerber, *Judge,* upheld the Commissioner's determination in a decision filed January 15, 1987 referred to above. *See also supra* note 2. Relying principally on its prior decision in *Western Casualty, supra,* the Tax Court rejected Home's use of the Statutory Method of accounting for calculating its federal income taxes on the grounds that the method allows a deduction not normally allowed under established cash or accrual tax accounting procedures and that it fails accurately to reflect income and expenses. The Tax Court also rejected Home's alternative claim that the Statutory Method satisfies the traditional "all events" test for calculating deductible expenses on the ground that, although the amounts that may be paid as commissions were fixed, actual payment of such commissions nevertheless was contingent. On August 24, 1988, the Tax Court determined that Home owed income tax deficiencies for the years 1968–70 totalling $20,974,856. A timely notice of appeal was filed November 17, 1988.

On appeal, Home argues that the Tax Court erroneously construed the applicable provisions of the tax code in concluding that Home could not use the Statutory Method for calculating its deductible expenses; and that *Western Casualty,* upon which the court so heavily relied, was wrongly decided and should not be followed. Alternatively, Home argues that its deductions were proper even under traditional Code accrual accounting methods since it has satisfied the "all events" test for determining when an expense has become fixed, and thus, deductible.

The Commissioner argues that the court correctly relied on *Western Casualty* in holding that unpaid commissions are not deductible in the year the policy is issued; that a correct reading of the Code indicates that Home can deduct its expenses only in the taxable year during which they are incurred; and that the rejection of Home's tax accounting method on the ground that it did not accurately reflect income was not "clearly unlawful".

We have jurisdiction to hear this appeal pursuant to 26 U.S.C. § 7482 (1982). For the reasons stated below, we affirm the Tax Court's determination of the tax deficiencies.

### II.

With these facts and prior proceedings in mind, we turn next to the applicable law.

It is not disputed that the commissions paid by Home to its agents are deductible business expenses. Rather, the question is *when* they may be deducted—in the year the installment policies are issued (Home's position) or only when the deferred premium installments are paid and the commissions are taken by the agents (Commissioner's position). The question turns on the meaning of the Int.Rev.Code § 832(b)(6)[5] as modified by the cross-reference to § 832(c) and the further cross-reference from § 832(c)(1) to § 162.

Home is subject to the Code provisions specifically applicable to property and casualty insurance companies. § 831 *et seq.* Section 832(a) provides that the term "tax-

4. *Supra* note 1.

5. Unless otherwise stated, all statutory citations in the balance of this opinion are to sections of the Internal Revenue Code of 1954, as amended,

which in turn correspond to the sections of Title 26 of the United States Code, 1982 codification.

For example, here, Int.Rev.Code of 1954, § 832(b)(6), 26 U.S.C. § 832(b)(6) (1982). We would cite it hereafter as § 832(b)(6).

able income" is gross income as defined in § 832(b) less the deductions allowed by § 832(c). Section 832(b)(3) provides that the "underwriting income" component of gross income consists of the "premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred". Section 832(b)(6) defines "expenses incurred" as "all expenses shown on the annual statement approved by [NAIC]" and provides that the figure shall be computed as follows:

"To all expenses paid during the taxable year, add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the taxable income subject to the tax imposed by section 831, there shall be deducted from expenses incurred (as defined in this paragraph) all expenses incurred which are not allowed as deductions by subsection (c)."

Section 832(c)(1) provides in relevant part that

"[i]n computing the taxable income of an insurance company subject to the tax imposed by section 831, there shall be allowed as deductions:

(1) all ordinary and necessary expenses incurred, as provided in section 162 (relating to trade or business expenses)...."

Finally, § 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year...."

In rejecting Home's use of the Statutory Method to deduct commission expenses in taxable years before the commissions actually are paid, the Tax Court interpreted the reference in § 832(c)(1) to § 162 as governing not only *whether* an expense can be deducted (i.e., whether it is "ordinary and necessary") but also *when* the expense is deductible (i.e., only during the taxable year in which it is "paid or incurred"). The court held that generally applicable principles of accrual accounting are to be applied in determining whether an expense has been "paid or incurred" and that deduction of unpaid commissions in the year the policies are issued fails the "all events" test

for determining when an expense has been "incurred".

Home argues that § 832(b)(6) determines *when* an expense falls into the category of deductible "expenses incurred" (i.e., when it is shown on the NAIC annual statement), while §§ 832(c) and 162(a) together merely determine *whether* the expense incurred is deductible (i.e., whether it is "ordinary and necessary"). Home argues that the phrase "expenses incurred" is a term of art that is defined for all insurance tax purposes in § 832(b)(6) to mean "all expenses shown on the annual statement approved by [NAIC]" and that any other interpretation (e.g., that "expenses incurred" are only those "paid or incurred during the taxable year") renders § 832(b)(6) and related provisions a "dead letter". Home points to certain 1921 Congressional testimony to the effect that insurance companies are allowed use of an accounting method different from that applicable to other taxpayers and refers to steps taken by Congress in 1985 and 1986 to correct "mismatching" under the insurance tax provisions of the Code as evincing an implicit recognition by Congress that Home's method of computing its taxes (which it admits results in "mismatching") was allowable under the Int.Rev.Code of 1954.

The Commissioner argues that Home's reading of the Code effectively nullifies the requirement of § 162 that, for an expense to be deductible, it must be "paid or incurred during the taxable year". The Commissioner also argues that there is no support for Home's piecemeal reading of the Code and that Home's argument that § 832(b)(6) contemplates use of the Statutory Method as the exclusive method for insurance company tax accounting purposes is misplaced. The Commissioner further argues that the decision of the Tax Court should be affirmed because Home's use of the Statutory Method fails the "all events" test for determining when an expense has been "incurred" and because its determination that Home's accounting method did not "clearly reflect income" is not "clearly unlawful".

Home's argument based on the House and Senate reports accompanying the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, is not without some force. These reports indicate that the understanding of Congress in 1985 and 1986 of the meaning of § 832 was that it did not incorporate the timing requirements of § 162. S.Rep. No. 313, 99th Cong., 2d Sess. 495–96 (1986) ("Present law permits a deferral of unearned premium income, while the expenses of earning that deferred income (e.g., premium acquisition expenses) may be deducted currently"); H.R.Rep. No. 426, 99th Cong., 1st Sess. 668–69 (1985) (same). The Commissioner argues that these reports are just plain wrong. The only case addressing the issue of deductibility of commissions on deferred premium installment insurance policies, *Western Casualty, supra,* did not allow current deduction for unpaid commission expenses.[6] Accordingly, to the extent that the Congressional reports may be at odds with *Western Casualty,* we agree with the Commissioner that they are incorrect.[7]

Congress amended § 832 in 1986 to require recognition of more premium income in the year an insurance policy is issued in order, it explained, to offset the income "mismatching" allowed under that section. S.Rep. No. 313, *supra,* at 496; H.R.Rep. No. 426, *supra,* at 669. Relying on *Pink v. United States,* 105 F.2d 183 (2 Cir.1939), Home argues that closing a loophole by Congress indicates that the loophole must previously have existed. Home states that,

as a result of the 1986 legislation, those insurers who always have followed the Commissioner's interpretation of the law have had to readjust their reporting so that a new mismatching is not created by the requirement of the amendment that more income be recognized. While this argument has a certain surface appeal, we believe that the events referred to do not require us to reverse the determination of the Commissioner and the Tax Court, especially where the provisions in question were susceptible of more than one interpretation.

■ It appears that the intent of Congress in originally enacting the provisions of the Code relating to property and casualty insurance companies demonstrates only that the Statutory Method was to be used as the *starting point* for tax accounting. *Commissioner v. General Reinsurance Corp.,* 190 F.2d 148, 151 (2 Cir.), *cert. dismissed,* 342 U.S. 863 (1951). As stated in *Western Casualty, supra,* the Statutory Method thus is not absolute. *Western Casualty, supra,* 571 F.2d at 517; *see also General Reinsurance, supra,* 190 F.2d at 150–51 (statute prevails over Statutory Method where the two conflict); *cf. Gerling Int'l Ins. Co. v. Commissioner,* 839 F.2d 131, 134 n. 6 (3 Cir. 1988) (§ 162 prevents an insurance company from deducting "expenses not yet actually paid or incurred"). An accounting practice for bookkeeping purposes is not necessarily what the Code allows for tax accounting purposes. *United States v.*

---

**6.** Indeed, *Western Casualty* was litigated and decided twice—once under the Int.Rev.Code of 1926, 44 Stat. 9, and once under the Int.Rev. Code of 1954. In both cases, the taxpayer sought to use the Statutory Method for tax purposes. In both cases the taxpayer was unsuccessful.

**7.** We also decline to give effect here to these reports on the ground that deducing original legislative intent regarding the statutory provisions in question on the basis of actions taken by Congress years later is at best a hazardous undertaking. *Waterman S.S. Corp. v. United States,* 381 U.S. 252, 269 (1965). In *Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2551 (1988), the Supreme Court, in analyzing

the meaning of the term "substantially justified" in the Equal Access to Justice Act, decided to ignore a House Report written in 1985 when the Act was reenacted. The Court held that the committee report did not provide an authoritative interpretation of the meaning of the original statute because "it is the function of the courts and not the Legislature, much less a Committee of one House of the Legislature, to say what an enacted statute means". *Id.* Since the House Report described judicial interpretations of the statute inaccurately, the Court also rejected the argument that the 1985 Congress intended to ratify the minority view of the law described by the report. We believe that this reasoning applies with equal force here.

*Hughes Properties, Inc.*, 476 U.S. 593, 603 (1986); *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 541–44 (1979).

Under § 446(b), taxable income is to be computed under the accounting method regularly used by the taxpayer for keeping his books unless the method used "does not clearly reflect income". *Thor Power Tool, supra*, 439 U.S. at 531–32. Where, as here, the Commissioner determines that a taxpayer's accounting methods do not clearly reflect income, Treas.Reg. § 1.446–1(a)(2), his determination is to be upheld unless "clearly unlawful". *RCA Corp. v. United States*, 664 F.2d 881, 886 (2 Cir.1981), *cert. denied*, 457 U.S. 1133 (1982); *see also Record Wide Distributors, Inc. v. Commissioner*, 682 F.2d 204, 206 (8 Cir.1982) (taxpayer has a "heavy burden of proving that the Commissioner's determination is plainly arbitrary"), *cert. denied*, 459 U.S. 1171 (1983). Home concedes that its tax accounting method does not clearly reflect income and expense. In view of the ambiguity of the Code provisions in question, we cannot say that the Commissioner's disallowance of Home's deductions was "clearly unlawful".[8]

We decline Home's invitation to hold that the Commissioner's disallowance of Home's deductions was "clearly unlawful." [9]

### III.

To summarize:

Since the Commissioner's determination that Home improperly deducted its commission expenses prior to the taxable year in which they were incurred was not "clearly unlawful", the decision of the Tax Court upholding the determination of tax deficiencies is affirmed.[10]

Affirmed.

---

8. Home argues that, while the Commissioner has broad authority to reject an accounting method, he cannot reject a taxpayer's accounting method which is "specifically authorized in the Code or regulations and has been applied on a consistent basis". *Hallmark Cards, Inc. v. Commissioner*, 90 T.C. 26, 31 (1988) (citing *Orange & Rockland Utilities, Inc. v. Commissioner*, 86 T.C. 199, 215 (1986)). This exception is inapplicable here since § 832 is ambiguous with respect to application of the Statutory Method here and thus does not "specifically authorize" its use for all tax accounting purposes.

9. Home argues in the alternative that its deductions pass muster since, at the time its policies were issued, "all events" necessary to fix the amount of the premiums to be collected and commissions to be paid had taken place. The "all events" test requires that, in order for an expense to be deductible, all events necessary to establish the fact of liability must have occurred and the amount of the deduction must be capable of being estimated with "reasonable accuracy". *Hughes Properties, supra*, 476 U.S. at 600. Treas.Reg. § 1.446–1(c)(1)(ii); Treas.Reg. § 1.461–1 (a)(2). Liability must be "firmly established" before the deduction may be taken. *United*

*States v. General Dynamics Corp.*, 481 U.S. 239, 243 (1987).

We disagree with Home's assertion that the "all events" test is satisfied since, at the time the policies were issued, the amount of commissions actually paid to the agents remained contingent on the policyholder (or Home) not cancelling the policy—an event which is not unlikely to occur. *Brown v. Helvering*, 291 U.S. 193, 200–01 (1934). We believe that this result is not inconsistent with *Hughes Properties, supra*, where a deduction for progressive slot machine jackpots was allowed in the tax year before the jackpot actually was won, since there the expense was virtually certain to be paid eventually whereas here Home's liability for commission expenses remained contingent on payment of the premiums by the insureds to the agents—an event which cannot be considered a "mere technicality". *General Dynamics, supra*, 481 U.S. at 244.

10. We express no opinion on the proper method of reporting by Home or any other insurer subject to § 831 *et seq.* of income and expense for federal income tax purposes for years other than those specifically here involved.