WOLTER CONSTRUCTION COMPANY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5392–75. Filed April 20, 1977.

*Charles F. Hartsock, James W. Halloran,* and *James J. Cunningham,* for the petitioner.

*Eugene M. Corbin* and *Rudolf L. Jansen,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Year | Deficiency |
|------|------------|
| 1970 | $7,052.48 |
| 1971 | 45,238.81 |

The sole issue for decision is whether petitioner is entitled to reduce its taxable income by deducting net operating losses incurred by its subsidiary in years prior to the time that it became a member of petitioner's affiliated group and reported in the subsidiary's separate returns.

All of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Wolter Construction Co., Inc. (Wolter), is an Ohio corporation with its principal office at Cincinnati, Ohio. For the calendar years 1970 and 1971, it filed U.S. corporation income tax returns with the Office of the Internal Revenue Service at Cincinnati, Ohio.

From July 15, 1968, through December 31, 1971, the outstanding stock of Wolter consisted of 250 shares of common stock. Brent F. Peacher (Brent) owned 200 of these shares, and Theodore T. Finneseth (Theodore) owned the remaining 50 shares.

River Hills Golf Club, Inc. (River Hills), is a Kentucky corporation which was incorporated on September 5, 1968. River Hills engaged in the business of operating a golf course located in California, Ky. From September 20, 1968, until October 23, 1969, the outstanding shares of River Hills consisted of 587 shares of common stock and 226 shares of preferred stock. The common stock was held as follows:

| Shareholder | Number of shares | Percentage of stock ownership |
|---|---|---|
| Brent F. Peacher | 270 | 46 |
| Theodore T. Finneseth | 270 | 46 |
| Luella Peacher | 47 | 8 |
| Total | 587 | 100 |

The preferred stock was nonvoting and was limited and preferred as to dividends. All 226 shares of preferred stock outstanding were held by Luella Peacher (Luella), who was Brent's mother and Theodore's mother-in-law.

From the time of its incorporation, Wolter was engaged in the general contracting business. During the years 1968 and 1969, Wolter performed construction work for River Hills, as a result of which River Hills owed Wolter certain obligations. On October 24, 1969, River Hills issued and delivered 360 shares of its common stock to Wolter in consideration of the cancellation by Wolter of $18,000 of such obligations. On the same date, Brent and Theodore each transferred 20 shares of their common stock of River Hills to Clifford H. Lahner, who is unrelated by blood or marriage to any of the other individual stockholders. As a result of these transfers, the outstanding common stock of River Hills was held as follows:

| Shareholder | Number of shares | Percentage of stock ownership |
|---|---|---|
| Brent F. Peacher | 250 | 26.4 |
| Theodore T. Finneseth | 250 | 26.4 |

| | | |
|---|---|---|
| Luella Peacher | 47 | 4.96 |
| Clifford H. Lahner | 40 | 4.22 |
| Wolter Construction Co., Inc. | 360 | 38.02 |
| Total | 947 | 100 |

On March 2, 1970, River Hills issued and delivered an additional 1,988 shares of its common stock to Wolter in consideration of the cancellation by Wolter of an additional $90,000 of the aforesaid obligations and $27,400 of River Hills' promissory notes given for sums advanced by Wolter to River Hills in December 1969 and February 1970. From March 2, 1970, through December 31, 1971, the outstanding shares of common stock in River Hills were held as follows:

| Shareholder | Number of shares | Percentage of stock ownership |
|---|---|---|
| Brent F. Peacher | 250 | 8.52 |
| Theodore T. Finneseth | 250 | 8.52 |
| Luella Peacher | 47 | 1.60 |
| Clifford H. Lahner | 40 | 1.36 |
| Wolter Construction Co., Inc. | 2,348 | 80 |
| Total | 2,935 | 100 |

River Hills filed U.S. corporation income tax returns for the calendar years 1968 and 1969 and for the short taxable year extending from January 1, 1970, through March 31, 1970. In these returns, it reported net operating losses as follows:

| Year | Amount |
|---|---|
| 1968 | $11,418.73 |
| 1969 | 88,947.98 |
| 1970 (Jan. 1—Mar. 31) | 24,888.72 |
| Total | 125,255.43 |

The correct operating loss for the short taxable year January 1, 1970, through March 31, 1970, is $23,153.96. Of this amount, $15,134.27 was incurred in the period from January 1, 1970, through March 2, 1970.

On the consolidated return filed by petitioner and River Hills for the taxable years 1970 and 1971, deductions were claimed totaling $125,255.43 representing carryovers of net operating losses incurred by River Hills during the years 1968 and 1969 and the short year 1970. For the taxable years 1970 and 1971, River Hills had no taxable income.

There is no question but that Wolter and River Hills were entitled to file a consolidated return for the taxable years before us. The sole issue is the extent to which they are precluded from taking advantage, on such return, of River Hills' losses incurred prior to March 2, 1970, the date upon which Wolter became the owner of the percentage of the stock of River Hills required to satisfy the definition of an "affiliated group" contained in section 1504(a).[1] Resolution of this issue turns upon the effect to be given to the exception to section 1.1502–21(b)(1), Income Tax Regs. (which provides that net operating losses sustained by a member of the group in separate return years may be taken into account) contained in section 1.1502–21(c), Income Tax Regs. The latter section limits the net operating loss carryovers from separate return limitation years of a member of the group to the portion of consolidated taxable income of the group attributable to that member.[2]

Unless an exception contained in section 1.1502–1(f)(2) and (3), Income Tax Regs., applies, a separate return limitation year is defined as a "separate return year." Sec. 1.1502–1(f)(1), Income Tax Regs. A "separate return year" is in turn defined as "a taxable year of a corporation for which it files a separate return or for which it joins in the filing of a consolidated return by another group." Sec. 1.1502–1(e), Income Tax Regs.

As a consequence of the foregoing, if the years prior to March 2, 1970, were separate return limitation years for River Hills, the group would not be entitled to carry over River Hills' net operating losses from those years to 1970 and 1971, since no part of the group's consolidated taxable income in 1970 and 1971 was attributable to River Hills.

Petitioner argues that it falls within the "common parent" exception contained in section 1.1502–1(f)(2)(i), Income Tax Regs.[3] The difficulty with petitioner's argument is that it is

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question.

[2] Sec. 1.1502–21(c)(2), Income Tax Regs., provides in pertinent part as follows:

(2) *Computation of limitation.* The amount referred to in subparagraph (1) of this paragraph with respect to a member of the group is the excess, if any, of—

(i) Consolidated taxable income (computed without regard to the consolidated net operating loss deduction), minus such consolidated taxable income recomputed by excluding the items of income and deduction of such member, over

[3] Sec. 1.1502–1(f)(2), Income Tax Regs., provides in relevant part:

directly contrary to the provisions of section 1504(a). That section requires that there be a "common parent" of one or more chains of includable corporations and that the "common parent" own at least 80 percent of the voting power of the stock of at least one other includable corporation.[4]

Clearly, Wolter satisfies the definition of common parent for the taxable years at issue but not for any part of the period prior to March 2, 1970, and since River Hills owned no stock in Wolter, it cannot be the common parent.[5]

Petitioner seeks to avoid the impact of section 1504 by arguing that it only applies in determining eligibility to file a consolidated return (*Ray Engineering Co. v. Commissioner*, 42 T.C. 1120 (1964), affd. per curiam 347 F.2d 716 (3d Cir. 1965)) and should not apply to the definition of "common parent" insofar as availability of net operating losses is concerned. The essence of petitioner's rather convoluted argument is that the term "common parent" can be understood only by looking at the purposes served by the limitations on carryovers contained in section 1.1502–21(c)-(e), Income Tax Regs., from which it gleans the conclusion that the common parent rule should be interpreted to allow "free use of loss carryovers

(2) *Exceptions.* The term "separate return limitation year" shall not include—
(i) A separate return year of the corporation which is the common parent for the consolidated return year to which the tax attribute is to be carried (except as provided in §1.1502–75(d)(2)(ii) and subparagraph (3) of this paragraph),

[4] Sec. 1504(a) provides as follows:
(a) DEFINITION OF "AFFILIATED GROUP".—As used in this chapter, the term "affiliated group" means one or more chains of includible corporations connected through stock ownership with a common parent corporation which is an includible corporation if—
(1) Stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of each of the includible corporations (except the common parent corporation) is owned directly by one or more of the other includible corporations; and
(2) The common parent corporation owns directly stock possessing at least 80 percent of the voting power of all classes of stock and at least 80 percent of each class of the nonvoting stock of at least one of the other includible corporations.
As used in this subsection, the term "stock" does not include nonvoting stock which is limited and preferred as to dividends * * *

[5] Under some circumstances involving reverse acquisitions, the corporation (which is in form the acquired corporation) will be treated as the "common parent." Secs. 1.1502–1(f)(3) and 1.1502–75(d)(3), Income Tax Regs. But, in these situations, a more than 50-percent change in ownership of the corporation (which is in form the acquiring corporation) occurs. Such is not the case herein and petitioner does not contend otherwise. Indeed, such a contention would be antithetical to the very foundation of petitioner's argument.

when—and only when—the individual shareholders who suffered the losses will get the majority of the benefits from the carryover deduction."

Petitioner's argument is without merit. Initially, we think it highly significant that prior to 1928 brother-sister corporations were permitted to file consolidated returns. See sec. 240(d), Revenue Act of 1926, ch. 27, 44 Stat. 46. Section 141(d) of the Revenue Act of 1928, ch. 852, 45 Stat. 831, eliminated the brother-sister privilege and confined the privilege of filing consolidated returns to the "common parent" situation. See also 8A Mertens, Law of Federal Income Taxation, sec. 46.02 (1971).

In any event, there is no basis for construing the term "common parent" as looking to individual rather than corporate shareholders in one context of the consolidated return provisions but not in another. Indeed, if we were to accede to petitioner's blandishments, we would be treating brother-sister corporations more favorably than situations where a parent-subsidiary relationship actually existed and the parent sought to take advantage of the losses of the subsidiary incurred during a taxable year when the subsidiary filed a separate return. See *Likins-Foster Honolulu Corp. v. Commissioner,* 417 F.2d 285, 292 n. 5 (10th Cir. 1969), modifying and remanding on other grounds *Foster v. Commissioner,* T. C. Memo. 1966–273; *Phinney v. Houston Oil Field Material Co.,* 252 F.2d 357, 362 (5th Cir. 1958).

As an alternative argument, petitioner rather disingenuously suggests that the consolidated return regulations were intended to allow carryover of losses from separate return years of all corporations which were "commonly controlled," but that respondent somehow overlooked the brother-sister form of control. The problem of carryover of losses in contexts other than that of parent-subsidiary groups is hardly novel. See *Planters Cotton Oil Co. v. Hopkins,* 286 U.S. 332 (1932). We are unwilling to read into the regulations an exception to the separate return limitation year solely on the belief that such an exception was inadvertently omitted. We believe that "there is no overwhelming conceptual reason to offset the separate return losses against consolidated income" (see Salem, "How to use net operating losses effectively under the new consolidated return regulations," 26 J. Taxation 270

(1967)) and that any corporation seeking to deduct losses of another corporation from past years can do so only upon the authority of a specific provision. See *Woolford Realty Co v. Rose,* 286 U.S. 319, 326 (1932).

Petitioner further contends that, to the extent that the regulations do not permit the carryover of River Hills' net operating losses for the years in question, they are invalid as exceeding the authority contained in section 1502.

At the outset, we note that, while section 1501 provides that the filing of a consolidated return shall be considered as a consent to all the regulations prescribed under section 1502, such consent does not preclude a challenge to the validity of such regulations. *Covil Insulation Co. v. Commissioner,* 65 T.C. 364 (1975); *Commissioner v. General Machinery Corp.,* 95 F.2d 759 (6th Cir. 1938); *Corner Broadway-Maiden Lane v. Commissioner,* 76 F.2d 106 (2d Cir. 1935).

In determining the validity of a challenged Treasury regulation, it is well settled—

that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. * * * [*Commissioner v. South Texas Lumber Co.,* 333 U.S. 496, 501 (1948).]

See also *Bingler v. Johnson,* 394 U.S. 741 (1969).

The facts that the regulations in question are legislative in character and that they were promulgated under the specific delegation of authority contained in section 1502 provide an added reason for holding them valid unless clearly contrary to the will of Congress. *Covil Insulation Co. v. Commissioner, supra* at 373.

The principal thrust of petitioner's challenge to the regulations dealing with net operating loss carryovers from separate return years is that the other provisions of the Code dealing with carryovers of losses (to wit, secs. 269, 381, and 382) and cases decided thereunder would not bar carryovers in comparable situations. We find it unnecessary to dissect petitioner's analysis of those sections because we are convinced that, whatever their import, any analogies that might be drawn therefrom are insufficient to convince us to hold invalid the regulations involved herein. We think it sufficient merely to note in passing that the legislative purpose in

enacting these provisions differs significantly from the purposes underlying the consolidated return provisions. See *Covil Insulation Co. v. Commissioner, supra* at 375, where we stated that "the law relating to consolidated returns is unique. It is designed to coordinate the details of treating several corporations as a tax unit." Perhaps the "lack of parallelism" between these sections and the consolidated return regulations "is difficult to justify as a policy matter." See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, p. 15–69 (1971 ed.). Compare Salem, "How to use net operating losses effectively under the new consolidated return regulations," 26 J. Taxation 270 (1967). But, such considerations are for the Congress, not the courts, to resolve. See *United States v. Correll,* 389 U.S. 299, 306–307 (1967).

We have already noted that the predecessors of respondent's regulations, which contained the same prohibition insofar as this case is concerned, have been sustained. *Phinney v. Houston Oil Field Material Co., supra.* See also *Likins-Foster Honolulu Corp. v. Commissioner, supra.*[6] We have also noted that prior to 1928 Congress recognized the brother-sister relationship in the consolidated return area. See p. 44, *supra.* But, even in such a context, losses from separate return years were limited. See *Woolford Realty Co. v. Rose, supra.* Moreover, the legislative history of the consolidated return provisions of the Code demonstrates that Congress fully expected that respondent's regulations would not allow loss carryovers incurred by one corporation prior to a consolidated return year to be deducted in the return for that year beyond the amount of that corporation's income in that return, even where the same shareholders controlled both corporations prior to consolidation.

Section 141(b) of the Internal Revenue Code of 1939, as amended by sec. 159, Revenue Act of 1942, ch. 619, 56 Stat.

---

[6] We note that in *Phinney v. Houston Oil Field Material Co.* the Court of Appeals quoted extensively from *Libson Shops v. Koehler,* 353 U.S. 382 (1957), and that petitioner argues that the latter case has no applicability under the 1954 Code. We see no need to address the question of the continued vitality of *Libson Shops* (see Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders pp. 16–65 to 16–69 (1971 ed.)); we do not read *Phinney v. Houston Oil Field Material Co.* as making *Libson Shops* the sine qua non of its resolution of an issue in the consolidated return area.

858, is, in all respects material herein, identical to the language contained in section 1502 of the 1954 Code. Regs. 104, section 23.31(b)(2)(iii)(C) and (D), as amended by T.D. 5244, 1943 C.B. 439, 452, promulgated pursuant to section 141(b), provided that certain net operating losses incurred by a corporation, prior to the first year in which its income was included in the consolidated return, were to be included in the consolidated net operating loss carryovers. However, section 23.31(d)(3) of the same regulations limited the carryover from such a taxable year to the net income of the loss-incurring corporation included in consolidated net income for the year to which the loss was to be carried over.

In Regs. 129, applicable to taxable years ending after December 31, 1949, the general carryover of the preconsolidation-losses provision and the limitations therein present in Regs. 104, sections 23.31(b)(2)(iii)(C) and (D) and 23.31(d)(3), were repromulgated in sections 24.31(a)(3) and 23.31(b)(3) without any change material for our purposes herein.

These provisions were incorporated virtually intact into H.R. 8300, 83d Cong., 2d Sess., secs. 1523 and 1623 (1954). In H. Rept. No. 1337, 83d Cong., 2d Sess. (1954), the Committee on Ways and Means stated (p. 87):

> Since the Revenue Act of 1928, the law has provided that the Secretary is to prescribe regulations, legislative in character, giving detailed rules for the filing of a consolidated return by an affiliated group of corporations. Since these regulations have been generally accepted and have become stabilized, your committee has inserted them into the law, changing them only to the extent necessary to reflect other changes your committee has made elsewhere in the Code.

The provisions were eliminated from the bill in the Senate. The reason for this change is stated in S. Rept. No. 1622, 83d Cong., 2d Sess. 120 (1954):

> While your committee recognizes that these regulations have been generally accepted, your committee believes that it is more appropriate to have these detailed rules in the form of regulations rather than in the statute. In this form they may be readily amended without necessary congressional action. * * *

The prior loss carryover provisions were repromulgated under section 1502 as section 1.1502–31(a)(3) and (b)(3), Income Tax Regs., without any significant change, and were in effect for taxable years beginning prior to January 1, 1966.

For subsequent years, the regulations in question were in effect. The 1966 regulations modified the long-established rule that losses of a corporation incurred in a year in which a separate return was filed cannot be carried over in an amount greater than the taxable income of the loss-incurring corporation, but only if the loss-incurring corporation was the common parent.

In sum, the basic rule of the challenged regulation has existed in the regulations since 1943. It is a well-settled principle that—

Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes, are deemed to have received congressional approval and have the effect of law.

See *Helvering v. Winmill,* 305 U.S. 79, 83 (1938); *Hanover Insurance Co. v. Commissioner,* 65 T.C. 715, 719 (1976). Where, as here, the legislative history clearly demonstrates congressional approval of the regulations, it certainly cannot be said that the regulations are beyond the scope of the legislative mandate.

We hold that petitioner is not entitled to carry over the losses incurred by River Hills prior to March 2, 1970, to the taxable years in question. Because of certain concessions,

*Decision will be entered under Rule 155.*